## REILLY TAR AND CHEMICAL CORPORATION v. CITY OF ST. LOUIS PARK.

121 N. W. (2d) 393.

April 26, 1963—No. 38,758.

*Yngve & Yngve,* for appellant.
*H. Horace Burry,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Relator, Reilly Tar and Chemical Corporation, a corporation doing business in the city of St. Louis Park, appeals from an order of the District Court of Hennepin County granting a motion of respondent, the city of St. Louis Park, for an order quashing a writ of certiorari issued on behalf of relator for the purpose of reviewing and determining the validity of the proceedings under which respondent city established on March 5, 1962, a housing and redevelopment authority pursuant to Minn. St. 462.425, subds. 1 and 2. Subdivision 1 provides:

"There is hereby created in each municipality in this state a public body corporate and politic, to be known as the housing and redevelopment authority in and for that municipality; provided, however, that no such authority shall transact any business or exercise any powers until the governing body of the municipality shall, by proper resolution, *find* that in such municipality (1) substandard, slum, or blighted areas exist which cannot be redeveloped without government assistance, (2) adequate housing accommodations are not available to veterans and servicemen and their families, or (3) there is a shortage of decent, safe, and sanitary dwelling accommodations available to persons of low income and their families at rentals they can afford * * *." (Italics supplied.)

This subdivision further provides:

"* * * In determining whether dwelling accommodations are unsafe or unsanitary, or whether substandard, slum, or blighted areas exist, the governing body may take into consideration the degree of deterioration, obsolescence, or overcrowding, the percentage of land coverage, the light, air, space, and access available to inhabitants of such dwelling accommodations, the size and arrangement of rooms, the sanitary facilities, the extent to which conditions exist in such buildings which endanger life or property by fire or other causes, and the original land planning, lot layout, and conditions of title in the area."

Subdivision 2 provides:

"The governing body of a municipality shall consider such a resolution only after a *public hearing* thereon after published notice in a news-

paper of general circulation in the municipality at least once not less than ten days nor more than 30 days prior to the date of the hearing. Opportunity to be *heard* shall be granted to all residents of the municipality and its environs and to *all other interested persons*. The resolution shall be published in the same manner in which ordinances are published in the municipality." (Italics supplied.)

It is relator's contention that respondent's finding of the existence of the three conditions set forth in § 462.425, subd. 1, upon which it based its resolution declaring a need for a housing and redevelopment authority, was quasi-judicial in nature and hence subject to judicial review by certiorari; and that the evidence submitted at the hearing for the purpose of determining whether such conditions existed completely failed to establish the existence of any of such conditions so that respondent's action was unauthorized and invalid.

The writ of certiorari was issued on March 6, 1962. Therein respondent was directed to refrain from further proceedings pertaining to the housing and redevelopment authority pending final disposition by the district court of the issues above described. Shortly thereafter, respondent moved to quash the writ on the following grounds:

"1.   The City Council action sought to be reviewed is not judicial or quasi judicial in nature as required by law for review under writ of certiorari.

"2.   The Relator does not have an interest in the matter which is the subject of Council action sufficient to maintain proceedings in certiorari.

"3.   This proceeding under the law is premature and does not constitute a final order on the issue raised."

In granting respondent's motion, the trial court stated:

"The Court does not here attempt to analyze the various aspects that are raised in this case, or to indicate that the relator might or might not ultimately have rights as against the city. No legislation has been passed. At this time, the only function that the Court could try to perform would be to restrain the city council from conducting its normal function of acting in sort of a legislative capacity, and with relation

to creating a body which, in and of itself, could not be harmful to the plaintiff. Once that body is created and hereafter tries to act, a new set of facts may arise. The Court feels that the instant proceeding is premature."

For the past 40 years relator has owned and operated a business within the corporate limits of respondent known as Republic Creosoting Company. It consists of structures, equipment, and extensive rail trackage upon 76 acres of land adjacent to the railway tracks of the Chicago, Milwaukee, St. Paul & Pacific Railroad and the Minneapolis & St. Louis Railroad Company. In its operations in which it employs some 80 people it treats lumber shipped in from various places with a creosoting process and thereafter reships it to numerous industries throughout the nation. In such work it treats approximately 1,700,000 cubic feet or 5,000 carloads of lumber each year and annually handles from lumber yards in southern Minnesota products of the value of about $500,000.

Because of freight rate differentials available to it in its present location, relator is able to reship the processed lumber at substantial savings in freight charges, an advantage which would not accrue to it if it were required to remove its plant to a location outside the Minneapolis switching district. It has expended in excess of $250,000 for improvements to the plant during the past 5 years and values some 41,935 feet of rail trackage installed there to be about $370,000. It estimates that it would cost more than $175,000 to move and relay such trackage in a new location. All of such items, of course, would be given consideration with respect to the valuation of relator's properties in addition to the value of the structures, equipment, and acreage comprising the same. Respondent estimates the approximate total value thereof to be $828,600, but relator asserts it to be worth many times that figure.

Respondent does not deny that it is its plan to acquire relator's structures, equipment, trackage, and land, close out its operations, and thereafter rezone the property for other commercial purposes under the housing and redevelopment authority which it activated as above described. By thus proceeding, it will presumably have the aid of Federal funds to the extent of approximately 75 percent of renewal costs, provided

the project is approved by the Federal housing administrator. The latter has agreed that "the city is making strong enough local efforts in planning and housing code enforcement to become eligible for federal aid in urban renewal," but there has been no approval by him or by any Federal agency of respondent's overall plan to acquire relator's properties and close out its operations under the authority described.

With respect to the three conditions prescribed in § 462.425, subd. 1, at least one of which must be found to exist as the basis for the activation of a municipal housing and redevelopment authority thereunder, relator asserts that at the public hearing held as provided in such section it was definitely established that none of such conditions existed. It contends further that at such hearing it was definitely established that its plant and trackage were situated in the midst of a commercial rather than a residential district, and that it had eliminated smoke and other problems which previously had attended its operations so that at the present time plant operations did not interfere with any residential property within respondent's corporate limits.

■ Certain well-established principles are applicable here. Any authority which a municipal corporation may exercise, either with reference to zoning or condemnation of property under eminent domain proceedings (both of which appear to be embodied in Minn. St. c. 462),[1] must have its origin in a grant of right from the state. Minnesota Canal & Power Co. v. Fall Lake Boom Co. 127 Minn. 23, 148 N. W. 561; 6 Dunnell, Dig. (3 ed.) §§ 3018, 3019, and cases cited. A municipality in exercising such a delegation of power cannot exceed the limitations thereof, State ex rel. Ford Motor Co. v. District Court, 133 Minn. 221, 158 N. W. 240; Independent School Dist. v. State, 124 Minn. 271, 274, 144 N. W. 960; 6 Dunnell, Dig. (3 ed.) §§ 3018, 3019; and where it enacts an ordinance or a resolution having the effect of an ordinance[2] which is in excess of the specific grant of right under which it is authorized to act, such action may be chal-

---

[1] § 462.445, subd. 1(6), authorizes eminent domain proceedings under Minn. St. 1945, c. 117. § 462.445, subd. 4(11), appears to give powers with respect to zoning.

[2] 13A Dunnell, Dig. (3 ed.) § 6749.

lenged in the courts. Thus, in State ex rel. Ford Motor Co. v. District Court, 133 Minn. 221, 223, 158 N. W. 240, 241, the court stated:

"Whether a municipality which is seeking to take private property for a designated purpose, under the power of eminent domain, has been given the power to take private property for such purpose, and whether such purpose is a public purpose, are questions for determination by the court; * * *."

■ Where the power to exercise eminent domain has been delegated to a municipality or to a public service corporation, and the statutory delegation of such power limits the exercise thereof to situations where there is an actual need therefor, such municipality or public service corporation may not proceed under the statute in the absence of such a need. When it does so, the courts may hold its actions in excess of the statutory authorization and hence invalid. State ex rel. Ford Motor Co. v. District Court, 133 Minn. 221, 158 N. W. 240; In re Condemnation by Dairyland Power Co-op. 248 Minn. 556, 82 N. W. (2d) 56; cf. Minnesota Canal & Power Co. v. Fall Lake Boom Co. 127 Minn. 23, 148 N. W. 561.

As stated in 11 McQuillin, Municipal Corporations, § 32.24:

"* * * And if the constitution or statute authorizes the taking of property only in cases of necessity, the necessity becomes a judicial question."

State ex rel. Ford Motor Co. v. District Court, *supra*; City of Chicago v. Vaccarro, 408 Ill. 587, 97 N. E. (2d) 766; Hendershott v. Rogers, 237 Mich. 338, 211 N. W. 905; Village of Reeder v. Hanson, 55 N. D. 331, 213 N. W. 492; In re Parking Fields 11 and 11A, 217 N. Y. S. (2d) 827; Town of Ames v. Wybrandt, 203 Okla. 307, 220 P. (2d) 693.

■ Under Minn. St. c. 462, as a prerequisite to a municipality's activation of a housing and redevelopment authority with power of eminent domain, the municipality must find the existence of at least one of the conditions specified therein relating to blighted areas, or inadequate housing for servicemen or people of low income, for the correction of which a housing and redevelopment authority is needed. The

302

absence of all of such conditions would clearly indicate the lack of need for any of the corrective measures which the act contemplates. But if they do not actually exist, the municipality's findings that they do would be lacking in evidentiary support, and its activation of a housing and redevelopment authority would be in excess of the powers granted it under c. 462.

So here, if it is true, as relator contends, that none of the specified conditions exist in St. Louis Park, and that the municipality's findings as to their existence are entirely lacking in evidentiary support, it would follow that the municipality's actions in activating a housing and redevelopment authority were in excess of its powers under § 462.425. In this situation, it seems clear that only by judicial review can these issues be determined. Accordingly, here the district court was correct in issuing the writ of certiorari to review the described proceedings, but erred in subsequently quashing such writ because of its conclusion that respondent's actions under § 462.425 were legislative rather than quasi-judicial in character.

■ From the limited record presented here, we are presently convinced that relator was a proper party to institute these proceedings. In the petition for a writ of certiorari it alleged that respondent's purpose in creating a housing and redevelopment authority under § 462.425 was the ultimate acquisition of relator's property to close down its operations. This has not been denied by anyone speaking for respondent, and various statements and references set forth in the record appear to sustain relator's claims. If, notwithstanding this, relator may not now challenge the validity of the resolution under which respondent seeks to proceed against it for the purposes described, it may be foreclosed from so doing under § 462.425, subd. 3, which provides:

"When the resolution becomes finally effective, it shall be deemed sufficient and conclusive for all purposes * * * if it declares that there is need locally for an authority and finds in substantially the terms provided in subdivision 1 that the conditions therein described exist."

Also, it is to be noted that under the provisions of § 462.425, subd. 2, a public hearing is required, at which "[o]pportunity to be heard shall be granted to all residents of the municipality and its environs and to

all other interested persons." When this language is considered with the requirement in subdivision 1 to the effect that the municipality shall "find" the existence within its corporate limits of one of the three conditions set forth therein, it seems clear that such provisions were intended to permit interested persons to appear at the hearing and if necessary to present evidence with respect to the issues referred to. Thereunder relator, as a property owner within respondent's corporate limits and vitally interested in the outcome of these proceedings, certainly was eligible to appear and present evidence in opposition to respondent's proposed action. That such right would carry with it an attendant right to challenge the adequacy of the evidence upon which the municipality based its findings cannot be seriously questioned, for were the rule otherwise, the statutory restrictions would be completely ineffectual.

The order appealed from is reversed with directions to reinstate the writ of certiorari and determine questions presented therein.