ELECTRONICS CORPORATION OF AMERICA & others *vs.* CITY COUNCIL OF CAMBRIDGE & others.

Middlesex.   February 1, 1965. — February 25, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Urban Renewal. Administrative Matter. Equity Jurisdiction,* Declaratory relief. *Equity Pleading and Practice,* Parties.

A bill in equity by business concerns in an area of a city attacking a "proposed" urban renewal project in the area on the alleged grounds that the project was based on determinations wrong in fact and in law and arrived at arbitrarily, in bad faith and for improper motives, was unconstitutional, and would cause irreparable damage to the plaintiffs, and seeking a declaratory decree that the area was not "a valid subject for an urban renewal project," and injunctive relief, did not present a proper case for relief in the courts and was demurrable where its allegations showed that no official action respecting any urban renewal project in the area had been taken beyond the adoption of a resolution by the city's redevelopment authority reciting that the area was "appropriate" for such a project and authorizing an application for Federal funds for surveys and plans, and the adoption of a similar resolution by the city council and approval thereof by the city manager. [567–568]

No ground appeared for joining the Attorney General as a defendant in a suit in equity for declaratory relief respecting action by other defendants alleged in the bill to be unconstitutional. [568]

BILL IN EQUITY filed in the Superior Court on October 8, 1964.

Demurrers to a "second substitute bill" were sustained by interlocutory decrees entered by *Fairhurst, J.,* who thereupon reported the suit.

*John M. Hall (David Dearborn* with him) for the plaintiffs.

*David Berman,* Assistant Attorney General, for the defendants Attorney General & another.

*Lewis H. Weinstein (Verne W. Vance, Jr.,* with him) for the defendant Cambridge Redevelopment Authority; *Richard D. Gerould,* City Solicitor, for the defendants City Council of Cambridge & others, also with him.

WILKINS, C.J. This bill in equity is for both injunctive and declaratory relief. The plaintiffs are twenty-seven out of ninety-four business concerns in the so called Kendall Square Industrial Area (the Area) in the city of Cambridge. The defendants are the city, the city council, the city manager, and the Cambridge Redevelopment Authority, herein sometimes called the Cambridge defendants. Also made defendants, allegedly because of G. L. c. 231A, § 8, are the Attorney General, the Division of Urban and Industrial Renewal of the Division of Commerce and Development of the Commonwealth, and its deputy commissioner. The declaratory decree sought is that "the Kendall Square Industrial Area does not constitute a valid subject for an urban renewal project" under G. L. c. 121. There is a prayer for an injunction against the Cambridge defendants "during the pendency of this suit from taking any action to advance or otherwise promote the proposed Kendall Square Urban Renewal Project." Another prayer is for a permanent injunction "enjoining the defendants from continuing or attempting to continue the Kendall Square Urban Renewal Project, so-called, or any similar project affecting the Kendall Square Industrial Area."

There were four demurrers to the "second substitute bill in equity": (1) by the city council, the city manager, and the city; (2) by the Authority; (3) by the Attorney General; and (4) by the deputy commissioner of the Division of Urban and Industrial Renewal.

A judge of the Superior Court sustained the demurrers, denied leave further to amend the bill, and, being of opinion that the interlocutory decrees ought, before further proceedings, to be determined by this court, stayed proceedings and reported the case. G. L. (Ter. Ed.) c. 214, § 30.

We summarize the bill. The Area has been zoned for many years for unrestricted industrial use. The plaintiffs employ their respective premises for manufacturing, warehousing, or other industrial or business purposes. An actual controversy has arisen between the plaintiffs, on the one hand, and the city council and the Authority, on the other, as to whether the Area can legally and constitutionally be the subject of an urban renewal project pursuant to G. L. c. 121 under the Constitution of the Commonwealth and the Constitution of the United States. On July 27, 1964, the city council, aware that the National Aeronautical and Space Administration (NASA) was in search for a site for its operations and with a view to being able to offer NASA a suitable site, by resolution requested the Authority to apply for an advance of Federal funds for surveys and plans for the Area. On September 30, 1964, the Authority adopted a resolution that the Area was appropriate for an urban renewal project under G. L. c. 121 and authorized the filing of an application for the advance of $663,000 in Federal funds for surveys and plans. On the same day the Authority sent a letter to the city manager enclosing a copy of that resolution and a similar resolution to be adopted by the city council and approved by the city manager, all of which was done on October 8, 1964. The Area is not "substandard," nor "decadent," nor a "blighted open area," as defined in G. L. c. 121, § 26J. There are only two or three dwellings in the Area. None of the buildings, with one or two exceptions, is obsolete or in need of

major maintenance or repair. To the contrary, they have almost all been kept in good condition and are well adapted for the purposes for which they are used. The Area is in no sense "detrimental to safety, health, morals, welfare or sound growth" of the community, and will continue to be redeveloped by private enterprise. The determinations by the Authority and the city council that the Area "is appropriate for an urban renewal project" under G. L. c. 121, are wrong in fact and in law, in that no reasonable person or group of persons could in good faith so find. Such determinations were arrived at arbitrarily, capriciously and in bad faith, since they were not based on adequate studies by qualified personnel, but solely on a desire to provide a site for NASA without regard to the existence of any of the statutory requirements enumerated in G. L. c. 121, § 26J. Because the Area can, under no circumstances, be found to be substandard, decadent, or a blighted open area, the city council and the Authority are not authorized to make it the subject of an urban renewal project under c. 121. In consequence, all action taken by the city council or the Authority to this end is "invalid, illegal and without basis in fact or law," and the carrying out of the project would deprive the plaintiffs of their property without due process of law. The purpose of the project is in no sense urban renewal, but the Authority and the city council are conspiring to make a site available to NASA through an attempted illegal and unauthorized application of the urban renewal statutes. The carrying out of the project would involve the use of public funds and the taking of land for private purposes. The plaintiffs have suffered irreparable damage.

"Urban renewal projects shall be planned, undertaken and carried out in a city or town by the redevelopment authority thereof . . . ." G. L. c. 121, § 26YY (as appearing in St. 1955, c. 654, § 4). A redevelopment authority "shall have the same functions, rights, powers, privileges and immunities" as a housing authority. G. L. c. 121, § 26QQ, second paragraph (as amended through St. 1957, c. 150, § 1). A housing authority, among many things, has power

"To determine what areas within its jurisdiction constitute sub-standard, decadent or blighted open areas and to prepare plans for the clearance thereof." G. L. c. 121, § 26P (b) (as amended through St. 1955, c. 640, § 2). No urban renewal project can take effect until the local authority's application has the approval of the Division of Urban and Industrial Renewal of the State Department of Commerce and Development. "No urban renewal project shall be undertaken until the urban renewal plan therefor has been submitted to, and approved by, the division of urban and industrial renewal; and no urban renewal plan shall be submitted to the division of urban and industrial renewal unless the same has been approved by the city manager with the approval of the city council . . . ." G. L. c. 121, § 26ZZ (as amended through St. 1960, c. 776, § 7).[1] See G. L. c. 121, § 26KK (as amended through St. 1960, c. 776, § 6); *Bowker* v. *Worcester,* 334 Mass. 422, 424–425. If the Authority decides to act under G. L. c. 121, § 26P, third unlettered paragraph (inserted by St. 1961, c. 188, § 1, and amended by St. 1962, c. 115, and c. 764, § 1), and obtains the prescribed consent and approval, the plaintiffs' remedy to the courts is there specified.

No approval by the Division has been requested, and, so far as we know, no determination to proceed by § 26P has been made. The most that has occurred is that the Authority, at the request of the city council, has adopted a resolution that the Area is "appropriate" for an urban renewal project under G. L. c. 121, and has applied for Federal funds to make "surveys and plans in connection with such project." A similar resolution has been adopted by the city council and approved by the city manager. The precise boundaries of the Area thus deemed "appropriate" have not been given, and very likely could not be. As stated in the brief of the Attorney General, the bill merely amounts to alleging that the Authority is studying the Area for urban renewal. Such a study is clearly within its jurisdiction.

---

[1] Other restrictions upon approval by the Division appearing in § 26ZZ, as amended, need not be recited.

As was said in *St. Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, 470: "To permit judicial interference with the orderly administration by the commission of matters entrusted to it by the Legislature before it has commenced to exercise its authority in any particular case or before it has had an opportunity to determine the facts and make a final decision, would in effect transfer to the courts the determination of questions which the Legislature has left in the first instance to the commission, and would result in the substitution of the judgment of the court for that of the commission. Courts must be careful not to invade the province of an administrative board. The instances are rare where circumstances will require such interference." See *Marshall* v. *Registrar of Motor Vehicles*, 324 Mass. 468, 471.

The derogatory allegations in the bill do not enable the present attempted intrusion into the orderly consideration of the subject to be maintained. A case cannot be constructed on the denial of the truth of findings the Authority might make. *Stockus* v. *Boston Housing Authy.* 304 Mass. 507, 509–510. *Despatchers' Cafe Inc.* v. *Somerville Housing Authy.* 332 Mass. 259, 261. The other objections alleged, such as unconstitutionality, irreparable damage, bad faith, or improper motives do not raise any present controversy under G. L. c. 231A, or grounds for injunctive interference in the deliberations of the Authority or in the duties as yet unperformed by any other public body or official. What, if any, public project may emerge is at the moment wholly speculative.

It is not necessary, and we shall not attempt to express an opinion on the remaining matters argued other than to say that no reason appears for making the Attorney General a party. There is no allegation of any act by him. An allegation of unconstitutionality is only ground for notice to him under G. L. c. 231A, § 8. *City Manager of Medford* v. *Civil Serv. Commn.* 329 Mass. 323, 330. *Weinstein* v. *Chief of Police of Fall River*, 344 Mass. 314, 315 n.

*Interlocutory decrees sustaining demurrers affirmed.*