MARTIN A. BEATTY v. WINONA HOUSING AND REDEVELOP-MENT AUTHORITY AND OTHERS.

151 N. W. (2d) 584.

June 9, 1967—No. 40,259.

*Harold J. O'Loughlin* and *Martin A. Beatty,* pro se, for appellant. *C. Stanley McMahon* and *Robert D. Langford,* for respondents.

NELSON, JUSTICE.

Appeal by plaintiff from a judgment dismissing his action for declaratory judgment. There appear to be three issues raised on appeal: (1) Whether in this instance the appeal is properly taken from the judgment; (2) whether plaintiff's complaint herein violates Rule 8.05, Rules of Civil Procedure, which specifies that "[e]ach averment of a pleading shall be simple, concise, and direct"; and (3) whether a justiciable controversy exists.

Plaintiff is a practicing attorney in the city of Winona and also an owner of real estate in the downtown portion of that southern Minnesota community. He has brought this action attempting to challenge the constitutionality of the Municipal Housing and Redevelopment Act, Minn. St. 462.411, et seq., and of the Housing Act of 1949, as amended, 42 USCA, § 1441, et seq., and contending that various acts of the city council and the Housing and Redevelopment Authority of Winona pertaining to urban renewal are illegal.

The undisputed facts that emerge from the pleadings and the affidavits attached to the motions of defendants for dismissal of the action are as follows: The Housing and Redevelopment Authority of Winona (erroneously designated as Winona Housing and Redevelopment Authority and hereafter referred to as the Authority) is a municipal corporation organized and existing pursuant to Minn. St. 462.411, et seq. Pursuant to 42 USCA, §§ 1441 and 1450, et seq., both the Authority and the city enacted resolutions in November 1963 determining that it was in the public interest for the Authority to obtain an advance of funds from the Housing and Home Finance Agency for the purpose of preparing a general neighborhood renewal plan in downtown Winona and upon the completion thereof to use that plan and implement it with the necessary project or projects to be completed within a 10-year period, and also to use it as a guide for public improvements in the renewal area. The administrator of the Housing and Home Finance Agency, in accordance with the provisions of Title I of the Housing Act of 1949, as amended, subsequently authorized the advance of such funds and the Authority entered into two contracts, one with a firm of

city planning consultants to prepare the plan, and another with a firm engaged to do a marketability study of the area. As of September 1965, when plaintiff commenced his action, the plan had not been submitted to the Authority.

In essence, the city at that time had only entered upon advanced planning preparatory to formulating a general neighborhood renewal plan containing a workable program for community improvement. No master plan for renewal had been arrived at. Nevertheless, plaintiff at this embryo stage of the development of the renewal plan instituted his action by filing a 23-page complaint containing numerous paragraphs and subparagraphs referring to past and future occurrences and the pleader's conclusions concerning them. Plaintiff addressed questions to the trial court seeking answers ranging from the constitutionality of Federal and state statutes to determinations that have yet to be made initially by the governing bodies concerned with the urban renewal project. This lengthy complaint asks for no judgment or relief. It does make clear that plaintiff is opposed to everything the city council and the Authority have thus far done with respect to urban renewal in the city of Winona.

Defendants contend that this appeal should be dismissed for lack of jurisdiction. The record indicates that the trial judge issued an order dismissing the action October 29, 1965. He attached a memorandum stating that the order was made upon the grounds that the complaint failed to state a claim against defendants, or any of them, for lack of a justiciable controversy existing between the plaintiff and the defendants; and further that the complaint violated Rule 8.05, Rules of Civil Procedure, which requires that each averment of a pleading be "simple, concise, and direct."

Thereafter, on November 30, 1965, upon plaintiff's motion the trial judge ordered that judgment of dismissal be entered nunc pro tunc, stating in the order that "plaintiff desires that judgment be entered pursuant to said order so he can appeal therefrom." Thus, the judgment of dismissal subsequently entered was dated October 29, 1965, the date of the order dismissing the action, although it was filed by the clerk of the district court on December 1, 1965.

After plaintiff served his notice of appeal, defendants made a timely motion to dismiss, but this motion was denied by order of this court dated May 5, 1966, with the right to renew it upon oral argument, which was done. The basis of the motion was that the order granting the motions under Rule 12.02, Rules of Civil Procedure, to dismiss upon the ground that the complaint did not state a claim upon which relief could be granted was a final and appealable order; that no appeal was taken from it; that the court was without jurisdiction to enter judgment upon the order of dismissal; and, therefore, that the time to appeal had expired.

Defendants contend that no judgment need be or can be entered to give effect to the order of dismissal. They point out that appeals to this court are purely statutory; that Minn. St. 605.09(d) allows an appeal from "an order involving the merits of the action or some part thereof"; and that this section, adopted in 1965, is consistent with the Rules of Civil Procedure. Plaintiff agrees that the order dismissing the complaint operated as an adjudication on the merits and was an appealable order, but argues that this fact did not preclude entry of judgment thereon.

We have heretofore held that in special proceedings judgments were unauthorized and the orders entered were appealable, but only within 30 days after notice. In re American Finnish Workers Society, 246 Minn. 563, 76 N. W. (2d) 708. Special proceedings usually mean proceedings which may be commenced independently of a pending action by petition or motion, upon notice, in order to obtain special relief. See, Anderson v. Langula, 180 Minn. 250, 230 N. W. 645; Schuster v. Schuster, 84 Minn. 403, 87 N. W. 1014.

Although limitations upon the time for taking an appeal are to be liberally construed to avoid a forfeiture of the right of appeal, neither the supreme court nor the district court can extend the time for appeal by a stay of proceedings or by an order designed to accomplish that purpose directly or indirectly. In re American Finnish Workers Society, *supra*. See, also, Duncan v. Barnard Cope Mfg. Co. 176 Minn. 470, 223 N. W. 775; In re Estate of Bridgham, 158 Minn. 467, 197 N. W. 847; Koochiching Co. v. Franson, 91 Minn. 404, 98 N. W. 98.

The action before us does not constitute a special proceeding as

heretofore defined. Defendants rely upon Royal Realty Co. v. Levin, 243 Minn. 30, 66 N. W. (2d) 5, wherein the appeal involved an action for damages based upon fraud. A motion under Rule 12.02 was granted and an appeal taken from the order. This court, through Mr. Chief Justice Dell, carefully analyzed the case and statutory law, pointing out that before the adoption of the Rules of Civil Procedure we followed the rule that generally an order of dismissal was but an order upon which judgment could be entered and that the appeal was required to be from the judgment. Even then, there were exceptions, such as dismissal for want of jurisdiction, which was a final determination and, therefore, an appealable order. See, Bulau v. Bulau, 208 Minn. 529, 294 N. W. 845.

This court in the Royal Realty case construed Rule 12.02 in conjunction with Rule 41.02, which provides that unless otherwise specified an involuntary dismissal under that rule or any dismissal not provided for in Rule 41.01 (voluntary dismissals) other than a dismissal for lack of jurisdiction "operates as an adjudication upon the merits."

This court thus reasoned (243 Minn. 32, 66 N. W. [2d] 6):

"* * * Since the dismissal authorized under Rule 12.02 does not come within the terms of Rule 41.01, which provides for voluntary dismissals, the foregoing quoted provision of Rule 41.02 would seem to be applicable. Under this provision, a dismissal for failure of the complaint to state a claim for relief operates as an 'adjudication upon the merits.'"

We concluded (243 Minn. 33, 66 N. W. [2d] 6):

"* * * The statute which *expressly* authorized an appeal from an order sustaining a demurrer cannot be used to determine the question of the appealability of the order resulting from the judicial procedure substituted for the demurrer under the new rules. The fact, however, that an order sustaining a demurrer, which raised the same defense involved here, would have been appealable under our former practice does not indicate that the conclusion which we have reached—that the order entered pursuant to respondents' motion made under Rule 12.02 is appealable—is not a reversal of the previous policy of this court in inter-

preting the appeals statute. We are not broadening the grounds for appeal but rather permitting an appeal from an order which serves the same judicial function under the new rules as the order sustaining the demurrer did under our former practice."

In the early case of Thorp v. Lorenz, 34 Minn. 350, 25 N. W. 712, where plaintiff appealed from an order made at the trial dismissing the action on the ground that the complaint did not state a cause of action, this court held that the plaintiff should either have moved for a new trial and appealed from the order refusing it, or else have caused judgment of dismissal to have been entered and then appealed from the judgment.

In H. Christiansen & Sons, Inc. v. City of Duluth, 225 Minn. 486, 31 N. W. (2d) 277, plaintiff asserted that, because the original order sustaining the demurrer granted plaintiff leave to file an amended complaint, the judgment entered pursuant to the trial court's order sustaining the demurrer was not a final determination of the issues then submitted and hence was not appealable. We rejected this contention, saying (225 Minn. 492, 31 N. W. [2d] 280):

"We have frequently held that a judgment, to be appealable, must be a final determination of the rights of the parties in the action, but only in the sense of terminating the particular action. We have held that judgments of dismissal are appealable, as well as judgments on the merits. [Citations omitted.] *We have held that a party may cause judgment to be entered against himself under the rules of court, and appeal therefrom.* [Citations omitted.]

"Here, upon the expiration of the 30-day period in which plaintiff might have filed an amended complaint, defendant was entitled to judgment of dismissal upon the merits. The present judgment deprived him of this right and is final, insofar as the present action is concerned. By virtue thereof, defendant's rights have been finally determined, and it is deprived of the right to plead the judgment of dismissal upon the merits as a bar to any new action plaintiff may bring based upon allegations substantially identical with those contained in the original complaint.

"The judgment appealed from must be regarded as final in this respect, and plaintiff's motion to dismiss the appeal therefrom, because it is not final, must be denied." (Italics supplied.)

It may be noted that Royal Realty Co. v. Levin, *supra,* has been referred to in Royal Realty Co. v. Levin, 244 Minn. 288, 69 N. W. (2d) 667, and Grier v. Estate of Grier, 252 Minn. 143, 89 N. W. (2d) 398. The precise question, however, for which Royal Realty Co. v. Levin, 243 Minn. 30, 66 N. W. (2d) 5, was cited by defendants— whether the court could order entry of judgment—was not involved in that decision. Only one case, Fischer v. Perisian, 251 Minn. 166, 86 N. W. (2d) 737, has discussed H. Christiansen & Sons, Inc. v. City of Duluth, *supra.* There, it was distinguished from the Fischer case.[1]

Owing to the apparent confusion which exists as to whether the trial judge in the case at bar had jurisdiction to order entry of judgment in this case, under the long-established rule in Minnesota that a plaintiff may himself move for entry of judgment of dismissal and then appeal from the judgment, we have decided to recognize this appeal and to decide whether a justiciable controversy exists. Since we have before us a fairly complete record of the proceedings at the trial, we have decided to consider the appeal on its merits. This being a civil case, this court may, if it chooses to do so, consider the appeal on the merits as was done in Erickson v. Mathwig, 226 Minn. 55, 31 N. W. (2d) 918; In re Estate of Fitzgerald, 205 Minn. 57, 285 N. W. 285; Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305.

In order to invoke the Declaratory Judgments Act, there must be a justiciable controversy between the parties in order to confer jurisdiction on the court. State ex rel. Smith v. Haveland, 223 Minn. 89,

---

[1] See, Cunningham, *Appealable Orders in Minnesota,* 37 Minn. L. Rev. 309, 315: "Judgments of dismissal, whether with or without prejudice, are appealable as well as judgments rendered on the merits after full consideration." In support of this statement, the author cites H. Christiansen & Sons, Inc. v. City of Duluth, 225 Minn. 486, 31 N. W. (2d) 277; Bolstad v. Paul Bunyan Oil Co. 215 Minn. 166, 9 N. W. (2d) 346; Thorp v. Lorenz, 34 Minn. 350, 25 N. W. 712.

25 N. W. (2d) 474, 174 A. L. R. 544. In Seiz v. Citizens Pure Ice Co. 207 Minn. 277, 281, 290 N. W. 802, 804, this court said:

"Proceedings for a declaratory judgment must be based on an actual controversy. The controversy must be justiciable in the sense that it involves definite and concrete assertions of right and the contest thereof touching the legal relations of parties having adverse interests in the matter with respect to which the declaration is sought, and must admit of specific relief by a decree or judgment of a specific character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Mere differences of opinion with respect to the rights of parties do not constitute such a controversy."

Defendants contend that plaintiff's ownership of some property in the area which may be affected by urban renewal does not alone give him standing to use the courts in order to obtain answers to questions about something that has not yet happened and may not happen. They cite Electronics Corp. of America v. City Council of Cambridge, 348 Mass. 563, 204 N. E. (2d) 707, decided in February 1965, as being conclusive on this question. In that case 27 out of 94 business concerns in the Kendall Square industrial area in the city brought suit against the city and the Cambridge Redevelopment Authority seeking a declaratory judgment that the area did not constitute a valid subject for an urban renewal project. It was alleged by the complainants that the area had been zoned for unrestricted industrial use; that the plaintiffs used their premises for manufacturing and other industrial or business purposes; that the city was aware that the National Aeronautics and Space Administration was looking for a site for its operations and with a view to being able to offer it a site passed a resolution authorizing the Authority to apply for an advance of Federal funds for surveys and plans; that the Authority adopted a similar resolution and authorized the filing of an application for an advance of Federal funds for surveys and plans. The complaint further alleged that the area was not "substandard" nor "blighted"; that the buildings were not obsolete, but on the contrary had been kept in good condition for the purposes for which they were used; that the determinations of the Authority and the city that

the area was appropriate for an urban renewal project were wrong in fact and law and were arrived at arbitrarily, were not based on adequate studies by qualified personnel, and were only a device to provide a site for NASA; and that the carrying out of the project would deprive the plaintiffs of their property without due process of law and would be the result of an unlawful conspiracy between the Authority and the city council to make a site available to NASA by illegal application of the urban renewal statutes. Demurrers to the complaint were sustained in the trial court and affirmed on appeal. The court pointed out that the redevelopment authority was given, among other things, the power to determine what areas constituted substandard or blighted areas, but that no urban renewal project could take effect until approved by the Division of Urban and Industrial Renewal of the state Department of Commerce and Development, and that the local authority could not apply for the approval of a renewal plan unless the plan had been approved by the city manager and city council; and that no such approval had been requested. In fact, no determination to proceed had been made, and the court held that all that really had been alleged was that the local authority was studying the area for urban renewal.

In sustaining the demurrers the Supreme Court of Massachusetts said (348 Mass. 568, 204 N. E. [2d] 709):

"As was said in St. Luke's Hosp. v. Labor Relations Commn. 320 Mass. 467, 470: 'To permit judicial interference with the orderly administration by the commission of matters entrusted to it by the Legislature before it has commenced to exercise its authority in any particular case or before it has had an opportunity to determine the facts and make a final decision, would in effect transfer to the courts the determination of questions which the Legislature has left in the first instance to the commission, and would result in the substitution of the judgment of the court for that of the commission. Courts must be careful not to invade the province of an administrative board. The instances are rare where circumstances will require such interference.' [Citation omitted.]

"* * * The other objections alleged, such as unconstitutionality, ir-

reparable damage, bad faith, or improper motives do not raise any present controversy under G. L. c. 231A, or grounds for injunctive interference in the deliberations of the Authority or in the duties as yet unperformed by any other public body or official. What, if any, public project may emerge is at the moment wholly speculative."

It would appear that at the time this action was commenced urban renewal in Winona was exactly at the same stage as in the Massachusetts case: The Authority was studying the area for renewal, and what public project may emerge is still uncertain. Plaintiff, however, contends that a justiciable controversy exists, citing Reilly Tar & Chemical Corp. v. City of St. Louis Park, 265 Minn. 295, 121 N. W. (2d) 393, a case in which a property owner sought review of the validity of proceedings to create a municipal housing and redevelopment authority. It was conceded in the Reilly case that the plaintiff owned a substantial business and that it was the city's intention to acquire its property and rezone it for other commercial purposes. It was for that reason that this court concluded that the plaintiff had a sufficient interest to test the legality of the proceedings creating the authority. Here no such intention exists, and plaintiff's legal interest is no different from that of anyone else who owns or leases downtown property in the city of Winona.

Plaintiff appears to rely on Minneapolis Federation of Men Teachers v. Board of Education, 238 Minn. 154, 56 N. W. (2d) 203, to establish that he has standing in court from a present uncertainty and insecurity. However, in that case teachers with tenure rights, as well as teachers without such rights, were tendered contracts for their signature. This, we held, raised a legitimate question in their minds as to whether their tenure was in jeopardy sufficient to invoke the Declaratory Judgments Act.

In this case, plaintiff's action was dismissed when no renewal project had yet been planned. Under these circumstances neither plaintiff nor anyone else knows at present what that plan might be. It is clear that issues which have no existence other than in the realm of future possibility are purely hypothetical and are not justiciable. Thus, a litigant who questions the constitutionality of statutory provisions must, in order

to invoke the jurisdiction of the court, be able to show that the statute has been, or is about to be, applied to his disadvantage. See, State ex rel. Clinton Falls N. Co. v. County of Steele, 181 Minn. 427, 232 N. W. 737, 71 A. L. R. 1190; State ex rel. Smith v. Haveland, *supra*. He must show an injury or at least one that is imminent. Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530. Since plaintiff has not done this, no justiciable controversy exists between him and any of the defendants.

The fact is that plaintiff has no standing in this court at this time to raise any question concerning the legality or constitutionality of the statutes pertaining to urban renewal, either state or Federal. It would appear, however, that the questions he has sought to have determined have been decided adversely to him. See, Housing and Redevelopment Authority v. Greenman, 255 Minn. 396, 96 N. W. (2d) 673; Asch v. Housing and Redevelopment Authority, 256 Minn. 146, 97 N. W. (2d) 656; Housing and Redevelopment Authority v. Minneapolis Metropolitan Co. 259 Minn. 1, 104 N. W. (2d) 864; Berman v. Parker, 348 U. S. 26, 75 S. Ct. 98, 99 L. ed. 27.

We do not deem it necessary to pass upon the correctness of the trial court's determination that plaintiff's complaint did not meet the requirements of Rule 8.05, Rules of Civil Procedure, since we are in accord with its determination that the complaint did not present a justiciable controversy.

Affirmed.

OTIS, JUSTICE (concurring specially).
I concur in the result.

ROGOSHESKE, JUSTICE (concurring specially).
I concur in the result.