The CITY OF SHAKOPEE, Petitioner, Respondent,

v.

MINNESOTA VALLEY ELECTRIC COOPERATIVE, Appellant,

National Rural Utilities Cooperative Finance Corporation et al, Defendants.

No. 50873.

Supreme Court of Minnesota.

Feb. 20, 1981.

LeVander, Gillen, Miller & Magnuson and Harold LeVander, Jr., So. St. Paul, for appellant.

Krass, Meyer & Kanning and Phillip R. Krass, Shakopee, for City of Shakopee.

SIMONETT, Justice.

The City of Shakopee petitioned for the condemnation of all service contracts for customers of Minnesota Valley Electric Cooperative located within the Shakopee city limits and of all property and distribution facilities belonging to Minnesota Valley devoted to serving those customers. After a hearing, during which the cooperative moved for dismissal of the petition, the trial court approved the condemnation. Minnesota Valley now appeals the court's order denying its motion to dismiss and granting the city's petition. We affirm.

Minnesota Valley is an electric cooperative association. Of its over 10,000 customers, approximately 300 are located within the city limits of Shakopee. This service area was allocated to the cooperative by the Minnesota Public Service Commission under Minn.Stat. §§ 216B.37 and 216B.39 (1980).[1]

1. Respondents National Rural Utilities Cooperative Finance Corporation and Rural Electrification Administration, as mortgagees of the property under condemnation here, were prop-

Aside from Minnesota Valley's area, virtually the entire city is served by the Shakopee municipal utility. Profits from the municipal utility go directly into the city general fund. The utility also operates and maintains street lights, the value of which, together with revenue from profits, accounts for 15% of the city budget. Acquiring the cooperative's property would augment this revenue and, contend city officials, improve service to the city's current customers in rural areas adjacent to the cooperative's service area.

In its motion to dismiss, Minnesota Valley argued Shakopee lacked statutory authority for the condemnation and failed to prove the taking was necessary. The district court held Minn.Stat. § 465.01 (1980) gives Shakopee the power to condemn what it may purchase and Minn.Stat. § 216B.45 (1980) permits the city to purchase what it here seeks to condemn. On appeal, the cooperative contends the court erred in relying upon § 465.01 because that statute grants only a *general* power of eminent domain. The petition in issue, appellant continues, requires *specific* authorization either expressly or impliedly granted by statute. The cooperative goes on to analyze Minn.Stat. §§ 412.211, 412.321 and 216B.47 (1980) to demonstrate the lack of any such specific authorization.

 We agree the exercise of eminent domain power over property already devoted to public use requires specific statutory authorization when the use planned for the property by the condemner is inconsistent with its current use. *City of Shakopee v. Clark*, 295 N.W.2d 495, 499 (Minn.1980); 1 P. Nichols, *Nichols on Eminent Domain* § 2.2 (3d ed. 1980). However, in these circumstances, where the city intends to use the cooperative's property in a manner identical to its current use—supplying electricity to customers in the cooperative's service area—the applicable rule has been stated as follows:

erly joined as indispensable parties in the proceedings below. They have not appeared or submitted materials and therefore we assume their interests are represented by Minnesota Valley Electric Cooperative.

If * * * the purpose of such acquisition is to transfer the ownership and operation of such property from a public service corporation (which, although a quasi-public entity, is nevertheless a private corporation organized for profit) to a municipality or other purely public corporation, it has been held that the greater public use and increased public benefit which result from governmental operation justify such acquisition.

1 P. Nichols, *Nichols on Eminent Domain* § 2.2[9] (1979); *see also Duck River Electric v. City of Manchester*, 529 S.W.2d 202 (Tenn.1975); 11 E. McQuillin, *Municipal Corporations* § 32.67 (3d ed. 1977). We hold, therefore, that a city possessing a general power to condemn may acquire the property and service area of an electric cooperative association if a consistent use of the property is intended.

Minn.Stat. § 465.01 (1980) confers on Shakopee, a charter city, a general power of condemnation:

All cities may exercise the right of eminent domain for the purpose of acquiring private property within or without the corporate limits thereof *for any purpose for which it is authorized by law to take or hold the same by purchase* or gift * * *.

(Emphasis added.) Under Minn.Stat. § 216B.45 (1980), "Any public utility operating in a municipality under a license, permit, right or franchise shall be deemed to have consented to the purchase by the municipality, for just compensation, of its property operated in the municipality under such license, permit, right or franchise." Since Shakopee may purchase the cooperative's property, it may condemn it.

Minnesota Valley argues the word "purchase" in § 216B.45 is not used in its conventional sense, pointing out the section goes on to describe a "particularized scheme" for notice and a hearing, amounting to a "forced sale";[2] and that the follow-

2. Minn.Stat. § 216B.45 (1980) provides:

Any public utility operating in a municipality under a license, permit, right or franchise shall be deemed to have consented to the

ing section, 216B.46, requires a public hearing and referendum before any determination to purchase is effective.[3] Even assuming § 216B.45 should give a power to purchase, the cooperative argues, the purchase is not "authorized by law" (as required in § 465.01) until at least the public hearing and referendum have been successfully held.

■ These arguments misconceive the rationale of § 465.01, which focuses not on how or when a utility may be purchased, but on *why*. The section grants Shakopee the power to acquire property by condemnation "*for any purpose* for which it is authorized by law to take * * * by purchase" (emphasis added). Eminent domain may only be asserted for a public purpose; similarly, municipalities may only acquire property through purchase or gift for a public purpose. *See Visina v. Freeman*, 252 Minn. 177, 89 N.W.2d 635 (1958). Section 465.01 thus provides that where a city has the power to acquire certain property by purchase, sufficient public purpose exists to acquire it by condemnation.

We have long held that it is within the province of the legislature to declare public purpose and that such a determination will not be overruled unless manifestly arbitrary or unreasonable. *Metropolitan Sewer Board v. Thiss*, 294 Minn. 228, 200 N.W.2d 396 (1972); *Asch v. Housing and Redevelopment Authority of City of St. Paul*, 256 Minn. 146, 97 N.W.2d 656 (1959). The provisions of § 216B.45, authorizing either a conventional purchase or a forced sale, constitute a declaration that establishes municipal ownership of a utility as a valid public purpose. That these provisions can amount to a forced sale, as the cooperative observes, illustrates this legislative finding, since a statutory forced conveyance is in the nature of eminent domain and must be justified by a public purpose. *Bolin Lumber Co. v. Chicago & North Western Ry. Co.*, 270 Minn. 516, 522, 134 N.W.2d 312, 317 (1965).

■ We conclude, then, that while a referendum and, in some circumstances, a public hearing are preconditions to purchasing a utility under §§ 216B.45 and 216B.46, they are not required for exercising eminent domain. It is unnecessary for the voters to approve an acquisition by purchase for the city to acquire the property by condemnation; it is enough for eminent domain that a purchase is authorized by law if certain procedures are followed without having to follow those procedures. Thus the next sec-

purchase by the municipality, for just compensation, of its property operated in the municipality under such license, permit, right or franchise. The municipality, subject to the provisions of Laws 1974, Chapter 429, may purchase the property upon notice to the public utility as herein provided. Whenever the commission is notified by the municipality or the public utility affected that the municipality has, pursuant to law, determined to purchase the property of the public utility, and that the parties to the purchase and sale have been unable to agree on the amount to be paid and received therefor, the commission shall set a time and place for a public hearing, after not less than 30 days notice to the parties, upon the matter of just compensation or the matter of the property to be purchased. Within a reasonable time the commission shall, by order, determine the just compensation for the property to be purchased by the municipality. In determining just compensation, the commission shall consider the original cost of the property less depreciation, loss of revenue to the utility, expenses resulting from integration of facili-

ties and other appropriate factors. The order of the commission may be reviewed as provided in section 216B.52. Commission expenses arising out of the exercise of its jurisdiction under this section shall be assessed to the municipality. For purposes of this section, a public utility shall include a cooperative electric association.

3. Section 216B.46 provides:

Any municipality which desires to acquire the property of a public utility as authorized under the provisions of section 216B.45 may determine to do so by resolution of the governing body of the municipality taken after a public hearing of which at least 30 days published notice shall be given as determined by the governing body. The determination shall become effective when ratified by a majority of the qualified electors voting on the question at a special election to be held for that purpose, not less than 60 nor more than 120 days after the resolution of the governing body of the municipality.

**62**

tion in chapter 216B commands, "Nothing in Laws 1974, Chapter 429 [codified as 216B] shall be construed to preclude a municipality from acquiring the property of a public utility by eminent domain proceedings * * *." Minn.Stat. § 216B.47 (1980).

Minnesota Valley maintains that even if Shakopee has the power to condemn its facilities, the city has failed to demonstrate sufficient necessity for the taking. A showing of necessity is required when the statutory delegation of eminent domain power so limits its exercise. *Reilly Tar & Chemical Corp. v. St. Louis Park*, 265 Minn. 295, 301, 121 N.W.2d 393, 397 (1963). The source of power here, Minn.Stat. § 465.01 (1980), directs the procedure for condemnation be either that prescribed in Chapter 117, or that prescribed by city charter. Shakopee's charter is silent regarding condemnation and, in any event, Chapter 117 by its own terms controls all exercises of eminent domain. Minn.Stat. § 117.011 (1980). Chapter 117 conditions court approval of a condemnation petition on a finding of necessity. Minn.Stat. § 117.075 (1980).

When a showing of necessity is required, its existence is a judicial question. *Reilly Tar & Chemical Corp.*, 265 Minn. at 301, 121 N.W.2d at 397. The cooperative argues that when the condemner seeks to acquire property already devoted to a public use it must demonstrate a higher standard of necessity, citing *Northwestern Telephone Exchange Co. v. Chicago, Milwaukee & St. Paul Ry. Co.*, 76 Minn. 334, 347, 79 N.W. 315 (1899). But this does not apply when the prior public use is consistent with the use proposed by the condemner. The trial court found the taking here necessary, and its disposition must prevail since it is not clearly erroneous. *County of Blue Earth v. Stauffenburg*, 264 N.W.2d 647, 651 (Minn. 1978).

We have said a condemner satisfies its burden of proof when it shows a proposed taking is "*reasonably necessary or convenient* for the furtherance of the end in view." *Stauffenburg*, 264 N.W.2d at 650

(emphasis in original); *Northern States Power Co. v. Oslund*, 236 Minn. 135, 137, 51 N.W.2d 808, 809 (1952). Minnesota Valley charges the Shakopee City Council is seeking only to increase general city revenues by this taking and that such an end does not constitute sufficient necessity. This view goes too far. Operating a utility is a proper government function, both for deriving income and for providing service. If Shakopee chooses to supply electricity to city customers in the cooperative's service area, then acquiring the cooperative's lines, poles and other distribution equipment is a reasonable and convenient alternative to constructing the same facilities anew.

Affirmed.