**LINO LAKES ECONOMIC DEVELOP-MENT AUTHORITY, Respondent,**

v.

**George J. REILING, Appellant.**

No. C6–99–1473.

Court of Appeals of Minnesota.

May 16, 2000.

Barry A. Sullivan, William G. Hawkins & Associates, Anoka, MN (for respondent).

Larry B. Stevens, Larry B. Stevens & Associates, Roseville, MN (for appellant).

Considered and decided by PETERSON, Presiding Judge, ANDERSON, Judge, and HUSPENI, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

## OPINION

PETERSON, Judge.

Respondent Lino Lakes Economic Development Authority (EDA) filed a petition to acquire by condemnation four parcels of property, one of which is owned by appellant George Reiling. Reiling moved to dismiss the petition on grounds that EDA failed to (1) comply with Minn.Stat. §§ 469.101, subd. 1, 469.174, subd. 12 (1998), before bringing the petition and (2) establish a public use and necessity for the taking. Based on its conclusions that EDA was not required to comply with Minn.Stat. § 469.101, subd. 1, or Minn. Stat. § 469.174, subd. 12, before acquiring property for an economic development district and that EDA had established a public purpose and necessity for taking Reiling's property, the district court granted EDA's petition and appointed three commissioners to determine the amount of damages to award Reiling for the taking. This appeal is from the order granting EDA's condemnation petition. We affirm.

## FACTS

EDA filed a petition to acquire by condemnation four undeveloped parcels of property. Reiling owns one of the parcels, which is located at the southeast corner of the intersection of Hodgson Road and Lake Drive, within a district in Lino Lakes that is zoned for commercial use. The Hodgson/Lake intersection has undergone changes and realignments over the years that have altered the physical and legal status of adjoining properties and, as a result, many parcels adjoining the intersection are small, oddly shaped, and encumbered by rights-of-way and access restrictions. The condemnation petition states that EDA deemed it necessary to acquire the property to create an economic development district.

Before filing the condemnation petition, EDA gave the required notice for a condemnation hearing, held a condemnation hearing, and then issued a resolution authorizing the acquisition of Reiling's land by eminent domain. The resolution states that changes to the Hodgson/Lake intersection had caused excess rights-of-way in the southeast quadrant of the intersection, that the southeast quadrant was suitable and desirable for economic development, and that the City of Lino Lakes deemed it necessary to acquire Reiling's property and combine it with the excess rights-of-way to make development economically feasible. EDA did not hold a hearing pursuant to Minn.Stat. § 469.101, subd. 1 (1998), or issue a resolution containing the findings listed in Minn.Stat. § 469.174, subd. 12 (1998).

## ISSUES

I. Did the district court err by concluding that EDA is not required to hold a hearing pursuant to Minn.Stat. § 469.101, subd. 1, or make the findings required by Minn.Stat. § 469.174, subd. 12, before acquiring property by condemnation to create an economic development district?

II. Did the district court err by concluding that EDA established a public use and necessity for acquiring Reiling's property?

## ANALYSIS

### I.

Statutory construction is a question of law subject to de novo review. *Wynkoop v. Carpenter,* 574 N.W.2d 422, 425 (Minn.1998).

> The court's role is to discover and effectuate the legislature's intent. "If the legislature's intent is clearly manifested by [the] plain and unambiguous language of the statute, statutory construction is neither necessary nor permitted."

*In re Petition of Fairview–University Medical Center,* 590 N.W.2d 150, 153 (Minn.App.1999) (quoting *State by Beaulieu v. RSJ, Inc.,* 552 N.W.2d 695, 701 (Minn.1996)) (alteration in original). When a statute is unambiguous, the court must give effect to the statute's plain

meaning. *Tuma v. Commissioner of Economic Sec.,* 386 N.W.2d 702, 706 (Minn. 1986).

Minn.Stat. § 469.101 (1998) provides:

**Subdivision 1. Establishment.** An economic development authority may create and define the boundaries of economic development districts at any place or places within the city if the district satisfies the requirements of section 469.174, subdivision 10,[1] except that the district boundaries must be contiguous, and may use the powers granted in sections 469.090 to 469.108 [authorizing cities to establish EDAs and setting forth their powers] to carry out its purposes. First the authority must hold a public hearing on the matter. At least ten days before the hearing, the authority shall publish notice of the hearing in a daily newspaper of general circulation in the city. Also, the authority shall find that an economic development district is proper and desirable to establish and develop within the city.

**Subd. 2. Acquire property.** The economic development authority may acquire by lease, purchase, gift, devise, or condemnation proceedings the needed right, title, and interest in property to create economic development districts. * * *

Minn.Stat. § 469.174, subd. 12 (1998), provides:

"Economic development district" means a type of tax increment financing district which consists of any project, or portions of a project, not meeting the requirements found in the definition of redevelopment district, renewal and renovation district, soils condition district, mined underground space development district, or housing district, but which the authority finds to be in the public interest because:

(1) it will discourage commerce, industry, or manufacturing from moving

their operations to another state or municipality; or

(2) it will result in increased employment in the state; or

(3) it will result in preservation and enhancement of the tax base of the state.

Relying on *Reilly Tar & Chemical Corp. v. City of St. Louis Park,* 265 Minn. 295, 121 N.W.2d 393 (1963), Reiling argues that EDA was required to hold a hearing pursuant to Minn.Stat. § 469.101, subd. 1, and make the findings required by Minn.Stat. § 469.174, subd. 12, before bringing a petition to condemn his property. The *Reilly* court construed Minn.Stat. § 462.425, subd. 1 (1962), which created a housing and redevelopment authority (HRA) in each municipality in the state. Minn.Stat. § 462.425, subd. 1, expressly required a municipality to find the conditions specified in the statute before an HRA could transact any business or exercise any powers.

■ Minn.Stat. § 469.101, subds. 1–2, do not contain such limiting language. To the contrary, Minn.Stat. § 469.101, subd. 2, provides that an EDA "may acquire by * * * condemnation proceedings the needed right, title, and interest in property *to create economic development districts.*" (Emphasis added.) The emphasized language unambiguously authorizes an EDA to acquire property by condemnation before creating an economic development district, and the statutory language does not require an EDA to hold a hearing pursuant to Minn.Stat. § 469.101, subd. 1, or make the findings required by Minn. Stat. § 469.174, subd. 12, before acquiring property by condemnation. We, therefore, construe Minn.Stat. § 469.101, subd. 2, as authorizing an EDA to acquire property by condemnation before holding a hearing pursuant to Minn.Stat. § 469.101, subd. 1,

---

1. The reference to Minn.Stat. § 469.174, subd. 10, appears to be an error. Minn.Stat. § 469.174, subd. 10 (1998), defines the term

"redevelopment district." Minn.Stat. § 469.174, subd. 12 (1998), defines the term "economic development district."

or making the findings required by Minn. Stat. § 469.174, subd. 12.

We note that our construction is consistent with the supreme court's construction of other statutes authorizing municipalities to acquire property by eminent domain for designated public purposes. *See City of Duluth v. State*, 390 N.W.2d 757 (Minn. 1986) (construing statutes governing acquisition of property and creation of industrial development districts by port authorities; court concluded that public hearing and findings that industrial development district was proper and desirable were not prerequisites to exercising power of eminent domain under chapter 117 and that taking needed only to satisfy chapter 117's necessity and public purpose requirements); *City of Shakopee v. Minnesota Valley Elec. Coop.*, 303 N.W.2d 58, 61–62 (Minn.1981) (construing statutes governing acquisition of property and purchase of public utilities by municipalities; holding that a referendum and public hearings were not preconditions to acquiring property by eminent domain). Like the statutes at issue in *City of Duluth* and *City of Shakopee*, Minn.Stat. § 469.101, subd. 4 (1998), expressly authorizes an EDA to "exercise the right of eminent domain under chapter 117, or under its city's charter to acquire property it is authorized to acquire by condemnation."

We also note that our construction is consistent with the broad discretion accorded municipal development authorities by the legislature. *See R.E. Short Co. v. City of Minneapolis*, 269 N.W.2d 331, 337–38 (Minn.1978) (explaining public purpose doctrine underlying judicial review of municipal development authority decisions). Finally, as the district court found, this interpretation is logical "since the EDA needs to assemble various parcels to form a contiguous tract before it can establish an economic development district" under Minn.Stat. § 469.101, subd. 1.

■ Reiling argues that the public purpose and necessity requirements of chapter 117 cannot be met without the findings required by Minn.Stat. § 469.174, subd. 12. We disagree. The legislature has set forth the public purpose for takings for economic development projects in Minn.Stat. § 469.124 (1998); *see also* Minn.Stat. § 469.091, subd. 1 (1998) (applying Minn.Stat. § 469.123 to EDAs). This court grants "great deference to the initial legislative determination that a particular project serves a public purpose." *R.E. Short Co.*, 269 N.W.2d at 337. Regarding the necessity requirement, the requisite necessity is not absolute necessity, but rather it is sufficient to find that "the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose." *City of Duluth*, 390 N.W.2d at 764–65.

■ Reiling raises a legitimate concern that chapter 469 creates a risk that an EDA could acquire property for speculative purposes. An EDA could acquire property to create an economic development district and then not actually create it, yet retain the benefit of owning the property. However, it is the legislature's role, not this court's, to correct that problem. *See Vadnais v. State Farm Mut. Auto. Ins. Co.*, 354 N.W.2d 607, 609 (Minn. App.1984) ("While the * * * argument in favor of coverage is sound and based on public policy, we are bound by the rule that courts cannot amend statutes under the guise of construction.").

**II.**

■ Judicial review in condemnation proceedings is limited to determining whether the taking serves a public purpose and is necessary. *In re Condemnation by Minneapolis Community Dev. Agency*, 582 N.W.2d 596, 598 (Minn.App.1998), *review denied* (Minn. Oct. 29, 1998). Public purpose and necessity are questions of fact, and this court will affirm the district court's findings unless they are clearly erroneous. *Id.* at 599.

The court's review of a condemning authority's public purpose determination is very narrow:

> If it appears that the record contains some evidence, however informal, that the taking serves a public purpose, there is nothing left for the courts to pass upon. Courts may interfere only when the Authority's actions are manifestly arbitrary or unreasonable. The acts of an authority vested with legislative determination in a particular area are manifestly arbitrary or unreasonable where they are taken capriciously, irrationally, and without basis in law or under conditions which do not authorize or permit the exercise of the asserted power. The court is precluded from substituting its own judgment for that of the Authority as to what may be necessary and proper to carry out the purpose of the plan.

*City of Duluth,* 390 N.W.2d at 763.

As a result of changes and realignments to the Hodgson/Lake intersection, many parcels adjoining the intersection are small, oddly shaped, and encumbered by rights-of-way and access restrictions. The condemnation petition states that EDA deemed it necessary to acquire Reiling's parcel and three other properties to create an economic development district. The resolution authorizing acquisition of Reiling's property by eminent domain states that changes to the Hodgson/Lake intersection caused excess rights-of-way in the southeast quadrant of the intersection, that the southeast quadrant was suitable and desirable for economic development, and that the City of Lino Lakes deemed it necessary to acquire Reiling's property and combine it with the excess rights-of-way to make development economically feasible.

This evidence was sufficient to show that condemnation is necessary to make feasible economic development of Reiling's property and other parcels adjoining the Hodgson/Lake intersection. The district court's finding that the proposed taking of Reiling's property serves a public purpose is not clearly erroneous. *See* Minn.Stat. § 469.124 (actions required to assist in implementing economic development programs are a public purpose)

The existence of necessity is a judicial question. *City of Duluth,* 390 N.W.2d at 764. The requisite necessity is not absolute necessity; rather it is sufficient to find that "the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose." *Id.* at 764–65. A resolution by a municipal authority that a taking is necessary to accomplish a proper purpose is prima facie evidence of that necessity when no higher judicial finding of necessity is statutorily mandated. *Id.* at 765.

The district court explained its finding of necessity as follows:

> The property at issue is in a commercial zoning district and is not yet developed. The relocation and realignment of Hodgson Road and Lake Drive has left behind various rights-of-way, easements, and access restrictions. According to the EDA's resolution, the parcels need to be assembled into one parcel to make development "economically feasible." This resolution is prima facie evidence that condemnation is necessary, and Reiling has produced no evidence to the contrary.

Relying on *Regents of University of Minnesota v. Chicago & North Western Transp. Co.,* 552 N.W.2d 578 (Minn.App. 1996), *review denied* (Minn. Nov. 20, 1996), Reiling argues that the evidence was insufficient to prove necessity. The *Regents* court explained its conclusion that the district court did not clearly err in finding that the University had failed to demonstrate the required level of necessity for condemnation as follows:

> First, the record indicates that the University has not included this property on its master plan for its anticipated development of the Twin Cities campus. Second, although the University claims to

have at least three potential uses for the land, the uses are mutually exclusive, and the Board of Regents has not yet approved a single project for the property. Finally, because of soil contamination problems, it is undisputed that the University could not currently use the property for any of its proposed uses. The parties have not yet agreed on a remediation plan; decontamination of the property will require from approximately two to seven years to complete. At least one University official has described the time period before the University would use the property as "potentially indefinite." * * *

The University may well have the right to purchase this property, but it cannot acquire it for speculative future use (stockpiling) by condemnation.

*Id.* at 580.

In this case, EDA has a specific plan for the property it seeks to condemn, creating an economic development district, and there is no evidence of any problems that will interfere with that plan. The district court's finding of necessity is not clearly erroneous. *See Itasca County v. Carpenter,* 602 N.W.2d 887, 890 (Minn.App.1999) (Nov. 30, 1999) (noting that rule established in *Regents* prohibiting stockpiling of property for speculative use "is limited by the extreme facts present in that controversy" and discussing meaning of speculative in context of condemnation proceeding).

### DECISION

The district court did not err by granting EDA's petition to condemn Reiling's property.

**Affirmed.**