Cynthia Sue **HENSE**, Appellant,

v.

**G.D. SEARLE & CO.**, Appellee.

No. 88–1429.

Supreme Court of Iowa.

March 21, 1990.

Thomas J. Reilly of the Thomas J. Reilly Law Firm, P.C., Des Moines, for appellant.

Ross H. Sidney and Donna L. Paulsen of Grefe & Sidney, Des Moines, and Charles Q. Socha and Mary A. Malatesta of Tilly & Graves, Denver, Colo., for appellee.

NEUMAN, Justice.

This appeal and cross-appeal arise out of a products liability action brought against the manufacturer of an intrauterine contraception device. The controversy centers on the parties' dispute over the method by which plaintiff should conduct discovery of the corporate defendant's 750,000 product-related documents. The wrangling has resulted in six continuances of trial over the six-year life of the litigation.

When plaintiff's request for a seventh continuance was denied on the eve of trial, she invited the court to reconsider its earlier order denying summary judgment for the defendant. Plaintiff now appeals the resulting dismissal of her cause. She claims that it was an abuse of discretion for the trial court to deny the seventh continuance in light of the defendant's repeated discovery abuses. On cross-appeal, the defendant seeks to reverse the trial court's order imposing monetary sanctions for willful failure to compel production of documents. We affirm on both appeals.

I. *Background facts and proceedings.* In May 1982, plaintiff Cynthia Sue Hense

filed this action against defendant G.D. Searle & Co. (Searle) for personal injuries she attributed to the use of Searle's product, the "Copper–7" intrauterine contraceptive device (IUD). Her claimed injuries included pelvic inflammatory disease and resultant sterility. Subsequent amendments to the petition named two physicians involved in prescribing the IUD and thereafter treating Hense. Her claims against these individuals have been settled or otherwise dismissed and are not before us on appeal.

Trial was originally scheduled for late 1983. Over the course of the next five years, the trial court granted six continuances, the first two upon the parties' joint application and the last four at Hense's behest, unresisted by Searle. In December 1983, trial was continued to July 23, 1984; that date was continued to September 1985. Three weeks before trial, Hense was granted a continuance to March 3, 1986. In January 1986, Hense moved for a fourth continuance based on Searle's recalcitrant conduct with respect to discovery depositions of Searle employees. Hense prevailed and trial was rescheduled for November 17, 1986. Two weeks before the scheduled date, plaintiff successfully moved for a fifth continuance. The sixth continuance came in September 1987 when the court ordered trial set for August 1, 1988.

The discovery problem underlying the many delays centered on whether, as plaintiff claims, Searle has been deliberately unwilling to produce documents or, as Searle claims, Hense's discovery requests have been too broad and unspecific to be answered. In repeated response to nearly every document request, Searle asserted that because no master retrieval system to the "universe" of Copper–7 documents existed, the requests were as burdensome to Searle as to the plaintiff. As an alternative to production, Searle suggested that plaintiff visit its corporate headquarters and locate the documents herself. Plaintiff never availed herself of Searle's invitation to visit the document warehouse in Skokie, Illinois, nor was she ever directed to do so by court order.

This simmering discovery conflict boiled over in July 1987, when Searle inadvertently produced the "INDA Summary Index" in connection with its delivery of some 15,000 documents produced pursuant to one of plaintiff's successful motions to compel. The INDA Summary Index is a 136–page document that references a 12,000–page document called the Copper–7 Investigational New Drug Application (INDA), an application submitted to the Food and Drug Administration to gain approval for the testing of a new drug. To plaintiff, the existence of this index belied Searle's repeated assertion that it had no retrieval system with which to find documents.

When plaintiff found the index, she moved for sanctions, including default judgment, under Iowa Rule of Civil Procedure 134(b)(2). In her motion, plaintiff cited fifteen responses made by Searle that denied the existence of any index to the "New Drug Application" (a 45,000–page successor document to the 12,000–page INDA) or to any other Copper–7 documents. Searle resisted the motion on three grounds: (1) the index was attorney work product and, hence, not discoverable, (2) the index referenced an insignificant portion of the mass of Copper–7 documents, and (3) the index was of recent vintage and so had not been available for production during much of the litigation.

On September 4, 1987, the trial court ruled that the index, though labeled "Attorney Work Product–Confidential," displayed no other characteristics supporting its allegedly protected status. Moreover, the court ruled that rather than denying the summary's existence, Searle should have informed the court that it existed and sought a protective order, if necessary, based on an *in camera* inspection by the court. Searle's lack of candor prompted the court's finding that Searle "willfully failed to obey the previous court's order regarding discovery." The court imposed a sanction of $54,706.95 against Searle for its discovery abuse. Searle's cross-appeal challenges this monetary sanction.

In addition to imposing a sanction, the court's September 1987 order also continued the trial until August 1, 1988. The court reasoned that plaintiff needed additional time to utilize the new-found index to formulate additional discovery requests. Six months before trial, however, another dispute arose. After conferring with other attorneys engaged in litigation with Searle over the Copper–7 IUD, counsel for plaintiff sought the production of approximately 4000 pages of expert deposition transcripts. Searle agreed to produce the transcripts on condition that: (1) plaintiff advance the cost of duplication, or (2) plaintiff obtain copies from the original court reporting service, or (3) Searle would arrange for a copying service at plaintiff's expense, or (4) plaintiff could review the material at Searle's offices in Chicago. In response, plaintiff claimed the proposed twenty-cent-per-copy fee was exorbitant. She moved in March 1988 to compel production of the documents by Searle at no cost.

Before the trial court ruled on the motion to compel, plaintiff learned of a second index which Searle had not earlier revealed. Hense applied to the court for an *in camera* review. This index, which the parties concede to be no more than a list of labels appearing on boxes of documents, was produced to plaintiff in early May 1988. Upon its receipt, plaintiff urged the court to continue the August trial date on the ground that Searle's failure to produce the list earlier had prevented plaintiff from framing further document requests prior to the discovery deadline of May 1. The court summarily overruled plaintiff's motion.

The court did not rule on plaintiff's March 1988 cost payment squabble until June 1988, six weeks prior to trial. Plaintiff was ordered to prepay the copy costs as Searle had suggested. The court admonished plaintiff that "the trial date is not in jeopardy," reasoning that if she had wanted the documents badly enough, she could have obtained them at her own cost and sought reimbursement from Searle. Searle produced the copies within two days of the ruling.

Ten days later, in spite of the trial court's admonition, plaintiff moved for the eighth time to continue the trial. She claimed insufficient time to digest the 4000 pages of testimony produced in mid-June and asserted that the delay caused by the copy cost dispute was not her fault. The trial court ruled against her, finding that she had "ample time" to obtain whatever material was necessary to prepare for trial. It is this final denial of continuance that plaintiff challenges on appeal.

Meanwhile, on June 24, 1988, Searle moved for summary judgment on the ground that plaintiff had no expert to establish the causal link between Searle's product and plaintiff's medical injuries. The motion was denied. Then, on the day before trial was scheduled to begin, plaintiff moved the court to reconsider its earlier denial of summary judgment for Searle. Admitting such a move was "unorthodox," plaintiff claimed she sought such relief "in the interest of justice and judicial harmony." This appeal followed.

II. *Plaintiff's appeal.* Plaintiff contends that the trial court abused its discretion when it twice denied her request to continue the trial for a seventh time. This court denied interlocutory appeal from these rulings. Iowa Rule of Appellate Procedure 1, however, permits the appeal of interlocutory rulings as part of an appeal from a final judgment.

Having been denied the continuance she wanted and finding herself unprepared on the eve of trial, plaintiff invited the trial court to grant Searle's motion for summary judgment in a strategic attempt to avoid a potentially disastrous proceeding and obtain immediate review by this court. The dispositive question before us, therefore, is not whether plaintiff's challenge to the continuance ruling has merit, but whether she may appeal at all from a final judgment to which she has consented.

This court has consistently held that the payment of a judgment signals a litigant's acquiescence in the court's ruling and operates as a waiver of the right to appeal. *See Ames Gen. Contractors, Inc. v. Iowa Employment Sec. Comm'n*, 200 N.W.2d

538, 541 (Iowa 1972); *Bates v. Nichols*, 223 Iowa 878, 884, 274 N.W. 32, 35 (1937). This court has never considered, however, whether consent to an adverse judgment—standing alone—will serve to forfeit the consenting party's right to review. We thus turn to authority from other jurisdictions for guidance.

A number of states adhere to a strict rule that precludes appeal from interlocutory rulings by a litigant who consents to the final judgment. *See, e.g., Jetton v. Jetton*, 502 So.2d 756, 759 (Ala.1987) (consent judgments not appealable because consent "waives prior irregularities and constitutes a release of errors"); *Copeland v. Williamson*, 402 So.2d 932, 934 (Ala.1981) (consent to directed verdict precludes appeal of adverse evidentiary ruling); *Indiana Dep't of Pub. Welfare v. Rynard*, 403 N.E.2d 1110, 1113 (Ind.App.1980) (failure to oppose summary judgment constitutes acquiescence amounting to waiver of appeal); *Gallup Trading Co. v. Michaels*, 86 N.M. 304, 305, 523 P.2d 548, 549 (1974) (summary judgment by consent admits just determination of parties' rights and cannot be appealed); *Toplitsky v. Toplitsky*, 282 S.W.2d 254, 256 (Tex.App.1955) (consent to adverse judgment precludes litigant from complaining of errors allegedly committed before its rendition and may not be appealed).

Other jurisdictions recognize an exception where the plaintiff's consent is not truly voluntary when viewed in the light of prior rulings which have precluded recovery. *See, e.g., Taylor v. Baker*, 279 Or. 139, 143, 566 P.2d 884, 887 (1978) (where partial summary judgment effectively determines the action, subsequent nonsuit becomes mere formality not barring appeal); *Allen v. Atlanta & Charlotte Air Line Ry.*, 216 S.C. 188, 57 S.E.2d 249, 250 (1950) (where a ruling renders it impracticable for plaintiff to recover or defendant to prevail, nonsuit sought to test ruling will not be considered voluntary); *Bond v. A.H. Belo Corp.*, 602 S.W.2d 105, 108 (Tex.App.1980) (party's respectful obedience to firm and repeated rulings denying recovery of certain damages and disallowing proof thereof did not constitute consent to judgment predicated on different measure of damages or bar appeal therefrom).

Unique procedural rules and considerations of judicial economy sometimes justify the allowance of such appeals. Thus, in *Beatty v. Winona Housing & Redevelopment Authority*, 277 Minn. 76, 82, 151 N.W.2d 584, 588 (1967), the court reached the merits of a plaintiff's declaratory judgment action by affirming the long-standing Minnesota rule that a plaintiff may move for entry of dismissal in order to appeal from the adverse judgment. *See also Carden v. Johnson*, 282 Or. 169, 173, 577 P.2d 513, 515 (1978) (plaintiff's direct approach to appeal constitutional claim by seeking adverse judgment from trial court was "unorthodox and somewhat illogical" but more "efficient" than writ of mandamus); Annotation, *Appellate Review at Instance of Plaintiff Who Has Requested, Induced, or Consented to Dismissal or Nonsuit*, 23 A.L.R.2d 664, 670 (1969 & 1989 Supp.).

■ On balance, we think the "lack of consent" exception to the rule of nonreviewability, rather than a strict appellate waiver rule, better reflects Iowa's general preference for considering cases on their merits. Moreover, it parallels the "voluntariness" exception this court has applied to the general rule that a party who accepts the benefits of a judgment or decree may not appeal the provisions under which the benefits are awarded. *See Neylan v. Moser*, 400 N.W.2d 538, 541 (Iowa 1987) (party relying on appellate waiver based on acceptance of decree's benefits must prove waiver was knowing and voluntary).

■ Even applying this standard, however, plaintiff cannot prevail. Neither the trial court's final denial of a continuance—nor any other rulings preceding plaintiff's invited summary judgment—can fairly be said to have precluded plaintiff from recovering. To the contrary, plaintiff's undoing was her inability over a period of six years to find an expert supporting her claim of medical causation. The trial court went so far as to deny Searle's motion for summary judgment on this very ground six weeks prior to trial, ruling "plaintiff has a right to

present her case to a jury." Plaintiff cannot reasonably claim that her acquiescence in the subsequent summary judgment for Searle was not truly voluntary in the sense that the court's denial of a seventh continuance—right or wrong—made her defeat inevitable. In other words, having invited the final judgment herself, plaintiff cannot now successfully challenge the court's earlier rulings. She has waived her appeal.

III. *Defendant's cross-appeal*. Searle's cross-appeal from the imposition of monetary sanctions for discovery abuse rests on two grounds: first, that the sanction cannot be justified either legallly or factually and, second, that the sanction—even if justified—is excessive. Searle's principal contention on the first issue is that the index constituted privileged attorney work product not subject to discovery under Iowa Rule of Civil Procedure 122(c). On the second issue, Searle argues that even if the index were properly discoverable, the refusal to divulge it does not warrant a sanction of $54,000.

When a controversy arises over the discoverable nature of requested information, our scope of review is strictly circumscribed. A trial court has wide discretion in such matters and we will not reverse unless that discretion is exercised on clearly untenable grounds. *Ashmead v. Harris*, 336 N.W.2d 197, 199 (Iowa 1983). We accord this deference to the trial court because discovery rules are, by their nature, "liberally construed to effectuate the disclosure of relevant information to the parties." *Id.* Such disclosure is not without limits, however. Documents which are prepared "in anticipation of litigation" are discoverable only upon a showing that

> the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Iowa R.Civ.P. 122(c).

██ It appears undisputed that Searle prepared the INDA summary in anticipation of nationwide litigation over the Copper-7 IUD, a circumstance which would ordinarily trigger the plaintiff's burden of showing substantial need and undue hardship. *See* Iowa R.Civ.P. 122(c). Plaintiff, however, never had the opportunity to make such a showing because Searle inadvertently divulged the document in the face of denials concerning its existence. Given this conduct, the trial court properly rested its ruling, not on the status of the documents, but on Searle's lack of candor.

The party asserting privilege has the burden of showing that the privilege exists and applies. *Hutchinson v. Smith Labs, Inc.*, 392 N.W.2d 139, 141 (Iowa 1986); *Agrivest Partnership v. Central Iowa Prod. Credit Ass'n*, 373 N.W.2d 479, 482 (Iowa 1985). In each of the cases cited by Searle for the proposition that it had no duty to produce the index because it was protected work product, the attorney *asserted the privilege. See Schaffer v. Rogers*, 362 N.W.2d 552, 554 (Iowa 1985) (declining to produce documents on work product grounds); *Ashmead*, 336 N.W.2d at 199 (asserting privilege); *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1325 (8th Cir.1987) (refusing to answer questions on work product grounds); *Sporck v. Peil*, 759 F.2d 312, 313 (3d Cir.1985) ("there is no allegation in this case that defendants have improperly concealed or refused to produce required documents"); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 614 (D.C.N.Y.1977) ("counsel claimed work product privilege"); *Garcia v. Peeples*, 734 S.W.2d 343, 348 (Tex.1987); *Lone Star Dodge, Inc. v. Marshall*, 736 S.W.2d 184, 186 (Tex.App.1987). In no case cited did the attorney mislead opposing counsel and then, once the document surfaced, attempt to claim the privilege.

Searle does not now attempt to repudiate its many denials that an index existed because it uses those same negative responses to support its fallback argument that it answered the discovery requests truthfully, *i.e.*, there was no index to the *entire universe* of Copper-7 documents. Since there was only an index to 12,000 of the documents, Searle argues that it has been erroneously accused of deceit. We think the disingenuousness of Searle's argument

speaks for itself. The court found Searle playing "hide the ball" and imposed a penalty. We see no abuse of discretion in that judgment call.

As for the size of the sanction, that too is ordinarily within the sound discretion of the trial court. *State ex rel. Parcel v. St. John,* 308 N.W.2d 8, 10 (Iowa 1981). To overturn the trial court's ruling, the burden rests on Searle to show that the award was imposed "on clearly untenable grounds" or as a result of discretion exercised to "a clearly unreasonable extent." *Ashmead,* 336 N.W.2d at 199. We cannot say that this burden has been met.

In *Kendall/Hunt Publishing Co. v. Rowe,* this court identified a three-fold purpose for sanctions under rule 134(b)(2):

> (1) To insure that a party will not profit from its failure to comply;
>
> (2) To deter discovery abuse in the instant case and seek compliance with the court's discovery order; and
>
> (3) To deter discovery abuse in litigation, generally.

424 N.W.2d 235, 242 (Iowa 1988).

■ The record before us reveals that over a six-year span of time, Searle doggedly resisted plaintiff's attempts at meaningful discovery. It repeatedly asserted an inability to access—for plaintiff or itself—the many thousands of documents relating to the Copper–7 IUD. When the falsity of Searle's stand came to light, the trial court allowed plaintiff compensation for every hour spent moving to compel production as well as the hours spent by counsel attempting to effect discovery without the aid of the index. Over the six-year period, these accumulated hours exceeded 400. The additional investigative expense totaled $9485.69. These figures loom large but must be considered in relation to plaintiff's total pretrial expense of over $250,000. In other words, the size of the sanction is by no means insignificant, but neither is the magnitude of the litigation.

We find it neither untenable nor arbitrary that the trial court pegged approximately one-fifth of plaintiff's pretrial discovery expense to Searle's discovery abuses. The court's calculation was based on plaintiff's forty-one page itemization of hourly costs and expenses. Searle was given ample opportunity to resist. Searle's complaint that Hense has been compensated for $13,000 expended prior to the completion of the index loses much of its force when we consider that work on the index was begun within a month of plaintiff's first discovery request and yet at no time in the next three years did Searle supplement its interrogatory answers to reveal it. The trial court was within its discretion in imposing the chosen sanction.

IV. *Conclusion.* In summary, neither plaintiff nor defendant have convinced us that rulings leading to summary judgment for defendant and sanctions against it for discovery abuse were erroneous. We put this costly and unfruitful litigation to rest by affirming the district court on both appeals.

AFFIRMED ON BOTH APPEALS.

All Justices concur except HARRIS and LAVORATO, JJ., who take no part.