**CAPITAL ONE BANK (USA), N.A., Plaintiff–Appellant,**

v.

**Aric M. DENBOER, Defendant–Appellee.**

**Capital One Bank (USA), N.A., Plaintiff–Appellant,**

v.

**Carolyn L. Kelley, Defendant–Appellee.**

**No. 09–0354.**

Court of Appeals of Iowa.

Aug. 25, 2010.

---

Charles Litow and Piper Lori Hughes, Cedar Rapids, for appellant.

Aric Denboer, Rock Valley, appellee pro se.

Carolyn Kelley, North English, appellee pro se.

Stephen J. Holtman and Abbe M. Stensland of Simmons, Perrine, Moyer, Bergman, P.L.C., Cedar Rapids, for amicus curiae The National Association of Retail Collection Attorneys.

Thomas J. Miller, Attorney General, and Jessica J. Whitney, Assistant Attorney General, for amicus curiae Attorney General of Iowa.

Heard by VAITHESWARAN, P.J., and MANSFIELD and DANILSON, JJ.

MANSFIELD, J.

A credit card issuer challenges the dismissal of two separate small claims actions for failure to comply with Iowa Code section 537.5114 (2007). The lower courts ruled that section 537.5114 requires the creditor to provide the credit card user's entire transaction history dating back to when the account last had a zero balance. We disagree. We hold the creditor may comply with section 537.5114 in either of two ways. First, it may establish the prima facie elements of an account stated cause of action. This approach does not require proof of individual transactions. Alternatively, the creditor may provide an account history, such as electronic or hard copies of past monthly account statements. In doing so, the creditor would not be completely barred from recovery if it cannot go back to a zero balance, but would be limited to recovering any increase in debt for which itemization has been provided.

Because the lower courts applied an erroneous interpretation of section 537.5114, we reverse and remand for further proceedings.

## I. Background Facts and Proceedings.

This appeal involves two unrelated small claims actions brought by Capital One Bank (USA), N.A. (Capital One) against credit card account holders Carolyn Kelley and Aric Denboer. On October 22, 2008, Capital One filed an original notice in Iowa County asserting Kelley had defaulted on a credit card agreement and sought damages in the amount of $4036.42. On October 27, 2008, Capital One filed an original notice in Sioux County asserting Denboer had defaulted on a credit card agreement and sought damages in the amount of $974.96. Each original petition was accompanied by (1) a notice to cure default sent to the defendant; (2) a document titled "Verification of Account[,] Identification of Judgment Debtor, and Certificate re Military Service"; (3) a document titled "Capital One Credit Card Terms and Conditions" that had a copyright of 2002; and (4) some monthly billing statements. However, there was no information as to when each defendant had opened his/her credit card account and the billing statements did not begin with an account balance of zero.[1]

Kelley and Denboer were personally served with notice, but failed to appear. In each case, the small claims court declined to enter the requested default judgment. Instead, orders were entered stating Capital One had failed to comply with

---

1. In Kelley's case, Capital One submitted 148 pages of billing statements with closing dates from December 16, 2001 to October 16, 2006. In Denboer's case, Capital One filed only two billing statements with closing dates of September 15, 2007 and October 15, 2007, respectively.

the requirements of Iowa Code section 537.5114 and granting Capital One thirty days to correct the defects. In each case, the order was based on a form, which stated in part:

This file comes on for entry of a default judgment. After reviewing the file, the Court determines that the Plaintiff's action is based on a consumer credit transaction as defined by Iowa Code 537.1301(11). The Plaintiff has failed to comply with the requirements of the ICCC as contained in Iowa Code Chapter 537 and/or Iowa Rule of Civil Procedure 1.961 in the particulars stated below:

. . . .

_____ The Plaintiff has failed to comply with the requirements of Iowa Code 537.5114(1). The Plaintiff's petition fails to allege the facts of the consumer's default, the amount to which the creditor is entitled, *and* an indication of how that amount was determined.

_____ The Plaintiff has failed to comply with the requirements of Iowa Code 537.5114(2). "[I]n cases governed by the ICCC, 'no default judgment shall be entered in an action in favor of the creditor' unless a court is provided with information sufficient to compute the amount to which the creditor claims to be entitled. The information must be included in a verified complaint or in sworn testimony." *ITT Fin. Servs. v. Zimmerman,* 464 N.W.2d 486, 489 (Iowa Ct.App.1990).

In the Kelley case, both boxes were checked, indicating a failure to comply with subsections 1 and 2 of section 537.5114; in Denboer, only the second box, for subsection 2, was checked.

Capital One responded to each notice with a letter stating it did not believe it was required to produce an entire account history. In the Kelley action, Capital One said it had already filed all the billing statements it had; in Denboer, it included additional billing statements with the letter.[2] However, in neither case did Capital One introduce a billing statement that began with an account balance of zero. On December 23, 2008, and January 13, 2009, the magistrates dismissed the cases against Kelley and Denboer respectively for failure to comply with the courts' prior orders.

Capital One appealed the dismissals to the district courts. Although it argued at considerable length that it was not required to provide an accounting from a zero balance, Capital One requested in the concluding paragraph of each brief that the district court affirm the small claims court so it could appeal to the supreme court. Capital One explained:

Unfortunately, a reversal by the district court will not set precedent at the county or state level. The small claims court will be required to follow the decision in this case only, but may rule without regard to this decision in future cases. Currently, there are six other counties in Iowa which adhere to the same standard of requiring an accounting from a zero balance. In addition, there are eleven other counties which require far in excess of the last statement to obtain a default. In short, the standard for entering a default in small claims court is in a state of chaos. Cap One hopes that by bringing this issue to the state's highest court, uniformity and clarity can be returned to the small claims system.

On February 5, 2009, the Sioux County District Court affirmed the dismissal of

---

**2.** In Denboer's case, Capital One filed billing statements from May 9, 2007 (with a beginning balance of $591.90) to October 15, 2007 (with an ending balance of $864.16).

the Denboer case stating, "Pursuant to Appellant's prayer, the Judgment of the Magistrate is hereby affirmed." Two weeks later, on February 19, 2009, the Iowa County District Court issued a detailed opinion generally upholding the dismissal of the Kelley case.[3] That court found that under Iowa Code section 537.5114, the court must "verify the amount of the debt at issue" in order to enter a default judgment and Capital One had not "met the particular requirements of Iowa Code section 537.5114 in regard to the starting balance." In short, the district court confirmed that Capital One needed to provide an accounting from a zero balance.

Capital One applied for discretionary review of both cases, which our supreme court granted. The appeals were consolidated and transferred to this court. *See* Iowa Code § 631.16; Iowa R.App. P. 6.106.[4]

Capital One's applications for discretionary review indicate the requirements for collection of credit card debt vary considerably from county to county. Some jurisdictions appear to insist on full transaction histories, as did the lower courts here. Others apparently require only a "breakdown of principal and interest," documentation of "last charge or payment made," or something else. As one magistrate

stated in an order that is part of our appellate record:

> This Court is well aware that there are many views among Iowa Magistrates concerning what must be shown to obtain a default judgment in certain debt collection cases.
>
> . . . .
>
> This may be a dream but hopefully in the future there will be a 'bright line' established that will yield universal criteria.

## II. Standard of Review.

In a discretionary review of a small claims decision, the nature of the case determines the standard of review. Small claims actions that are tried at law are reviewed for correction of errors at law. A review of statutory construction is at law. We are bound, however, by a court's finding of fact if supported by substantial evidence.

*GE Money Bank v. Morales,* 773 N.W.2d 533, 536 (Iowa 2009) (internal citations omitted).

## III. Analysis.

### A. Section 537.5114 and the *ITT Financial Services* Case.

Capital One's actions against Kelley and Denboer were brought by a creditor against a consumer arising from a consum-

---

3. The district court reversed the dismissal only to the extent that it had been with prejudice, instead of without prejudice.

4. Although Capital One arguably consented to an adverse judgment from each district court, we do not find it has waived its right to appeal. *See Hense v. G.D. Searle & Co.,* 452 N.W.2d 440, 444–45 (Iowa 1990) (discussing the principle that consent to an adverse judgment generally precludes a litigant from complaining of errors in interlocutory rulings). In *Hense,* the court announced it would not follow a "strict appellate waiver rule," and added, "Unique procedural rules and consid-

erations of judicial economy sometimes justify the allowance of such appeals." *Id.* at 444. This case presents a special situation where Capital One aggressively litigated each case at the small claims level, then renewed its arguments in the district court while requesting the district court to affirm the small claims court so it could appeal to a higher level and obtain statewide clarification on an important legal issue. In any event, the Iowa County District Court ignored Capital One's invitation and instead wrote a detailed opinion affirming the small claims court on the merits.

er credit transaction. Thus, they are subject to the provisions of the Iowa Consumer Credit Code (ICCC). *See Midwest Check Cashing, Inc. v. Richey,* 728 N.W.2d 396, 399 (Iowa 2007) (discussing that the ICCC applies to all consumer credit transactions in Iowa that are not specifically excluded under the statute). Section 537.5114 of the ICCC provides:

1. In an action brought by a creditor against a consumer arising from a consumer credit transaction, the complaint shall allege the facts of the consumer's default, the amount to which the creditor is entitled, and an indication of how that amount was determined.

2. No default judgment shall be entered in the action in favor of the creditor unless the complaint is verified by the creditor, or unless sworn testimony, by affidavit or otherwise, is adduced showing that the creditor is entitled to the relief demanded.

As noted, the small claims courts dismissed Capital One's cases against Kelley and Denboer for noncompliance with this section.

In interpreting statutes, we give words their ordinary meaning within the context of the provision at issue and interpret that provision consistent with the entire statute of which it is a part. *Nash Finch Co. v. City Council,* 672 N.W.2d 822, 826 (Iowa 2003). In this case, we are guided in part by a navigation device—our court's prior decision in *ITT Financial Services v. Zimmerman,* 464 N.W.2d 486 (Iowa Ct.App. 1990).

*ITT Financial Services,* like the present case, involved a review of a default judgment. 464 N.W.2d at 488. There ITT sought to collect $1180 allegedly owed by the Zimmermans under a promissory note. *Id.* at 487. ITT filed both the note itself and a "verification of account, identification of judgment debtor, and certificate re military service." *Id.* However, ITT provided no explanation as to how it computed the $1180 balance due. *Id.* The small claims court nonetheless entered the requested default judgment. *Id.* When the Zimmermans later appeared, both the small claims court and the district court refused to set aside the default judgment. *Id.*

On appeal, we reversed. We initially noted that ITT's complaint was "wholly devoid of the facts of the Zimmermans' default and of any indication of how the amount, $1,180, was determined." *Id.* at 489. However, we pointed out that by failing to appear, the Zimmermans had technically waived their objections to the petition itself under section 537.5114(1). *Id.* Regardless, that still left the question whether the default judgment complied with section 537.5114(2). On this point, we concluded that subsection (2) had to be read in tandem with subsection (1). As we explained:

The language of subsection 2, in conjunction with subsection 1, leads us to believe a court must be able to compute the amount the creditor claims it is owed. The ability to compute the amount of the debt assures the court the creditor is not taking unfair advantage of a consumer who fails to appear and defend for whatever reason, and furthers a stated purpose of the ICCC. The information included on a verified complaint, if it includes the information required by subsection 1, would allow a court to make this computation. Therefore, we believe "complaint" as used in subsection 2 must be read as a complaint meeting the requirements of subsection 1 of section 537.5114. Sworn testimony adduced at trial showing that a creditor is entitled to the relief demanded would also allow this computation. We hold, in cases governed by the

ICCC, "no default judgment shall be entered in an action in favor of the creditor" unless a court is provided with information sufficient to compute the amount to which the creditor claims to be entitled. The information must be included in a verified complaint or in sworn testimony.

*Id.*

Thus, *ITT Financial Services* makes clear that in an ICCC case, the creditor must provide "information sufficient to compute the amount to which the creditor claims to be entitled," either in a verified filing with the court or in sworn testimony. *Id.*

As we have noted, both district courts here decided this meant the credit card company had to provide a full account history, starting with a zero balance. Capital One argues otherwise. It asserts: (1) the requirement that the court be able to compute the amount owed does not apply to efforts to collect credit card debt, as opposed to closed-end credit; (2) any such requirement is preempted by federal law; (3) section 537.5114 does not supersede the traditional account stated cause of action; and (4) in any event, section 537.5114 does not require it to produce a full account history beginning with a zero balance. Capital One argues that a verified "charge-off statement" together with a copy of the customer's account agreement should be a sufficient basis for obtaining a default judgment. As discussed below, we disagree with Capital One's first two arguments, but we agree in part with its third and fourth points.

### B. Does *ITT Financial Services* Apply to Open–End Credit?

■ We first address Capital One's contention that *ITT Financial Services* does not apply to all consumer credit transactions. Capital One points out that *ITT*

*Financial Services* involved a promissory note, not a revolving credit account. With a single promissory note, according to Capital One, it is relatively easy to produce the entire account history. Not so with a credit card, where there are new extensions of credit and fluctuating fees and charges.

These observations may be true, but we are not persuaded they matter. Nothing in section 537.5114 or *ITT Financial Services* suggests there should be two sets of rules, one for open-end credit and another for closed-end credit. Rather, there is one rule: Information sufficient to compute the amount claimed must be provided. *ITT Fin. Servs.*, 464 N.W.2d at 489. Also, we are not convinced (at least on the record before us) that credit card companies or their assignees cannot usually provide account histories. Since the ICCC was adopted in 1974, and *ITT Financial Services* was decided in 1990, tremendous increases in computerization of data have occurred. Information that used to be retrievable (if at all) only by assembling numerous hardcopy statements is now stored electronically. *See, e.g., Citibank v. Kovach,* 157 Ohio Misc.2d 24, 930 N.E.2d 394, 400 (Ohio Com.Pl.2010) (upholding judgment for Citibank after Citibank provided eight years worth of monthly credit card statements from its electronic database and noting, "Citibank accounts are maintained in an electronic database; therefore there are no 'original documents' constituting the account"); *see also Newgard ex rel. Newgard v. Bank of Am.,* 303 Wis.2d 466, 735 N.W.2d 578, 582 (Wis.Ct. App.2007) ("We see nothing absurd about requiring the Banks to retain the records of charges for which they wish to collect payment.").

### C. Does Federal Preemption Apply?

■ Capital One next advances a series of arguments based on federal preemption.

Initially, as a national banking association, it asserts state laws infringing on its lending power are preempted by federal law. *See* 12 C.F.R. § 7.4008.[5] According to Capital One, the interpretation of Iowa Code section 537.5114 by the lower courts in this case represents an improper intrusion on its lending powers. We do not agree. Among other things, the relevant regulation specifically exempts state debt collection laws to the extent they only incidentally affect the exercise of national banks' non-real estate lending powers.

■ Relatedly, Capital One argues that under Regulation Z of the Truth in Lending Act, it is only required to maintain credit card statements for two years. 12 C.F.R. § 226.25. However, there is no suggestion this law preempts more stringent record retention requirements that may arise in other contexts. *See In re Shank*, 315 B.R. 799, 810 (Bankr.N.D.Ga.2004) (rejecting the argument that the normal proof of claim requirements should be loosened because Regulation Z does not require the relevant records to be retained).

■ In yet another attempt to play federal law as a trump card, Capital One argues that Regulation Z gives a consumer only sixty days to dispute a credit card statement. *See* 15 U.S.C. § 1666; 12 C.F.R. § 226.13(b). Thus, the argument goes, there is no reason to require Capital One to produce old account statements.

However, Capital One's argument is somewhat oversimplified. Federal law establishes a deadline for a cardholder to notify the credit card company of a billing error, and thereby obligate the company to investigate and resolve the matter while withholding any collection activity. However, a cardholder's failure to exercise this right does not eliminate his or her ability to dispute the charge in a subsequent collection case. *See Citibank (S.D.) N.A. v. Mincks*, 135 S.W.3d 545, 559 (Mo.Ct.App. 2004) ("Nothing in the statute affirmatively imposes any penalty on the consumer for failing to take advantage of the benefits of this statute."); *Dillard Dep't Stores, Inc. v. Owens*, 951 S.W.2d 915, 918 (Tex. Ct.App.1997) ("The purpose of the protections afforded a consumer under section 1666 is not, after all, to change the substantive law with regard to his liability for the underlying debt, but to protect him from the intimidating process of bargaining over a disputed debt with a creditor in a superior bargaining position."). Accordingly, we do not accept Capital One's preemption arguments.

**D. Does the "Account Stated" Cause of Action Apply to Credit Cards?**

Capital One asserts that the lower courts' interpretation of section 537.5114 is incompatible with the traditional law of

---

5. This section states, in part:
 (d) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized non-real estate lending powers are not applicable to national banks.
 (e) State laws that are not preempted. State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers:

 (1) Contracts;
 (2) Torts;
 (3) Criminal law;
 (4) Rights to collect debts;
 (5) Acquisition and transfer of property;
 (6) Taxation;
 (7) Zoning; and
 (8) Any other law the effect of which the OCC determines to be incidental to the non-real estate lending operations of national banks or otherwise consistent with the powers set out in paragraph (a) of this section.

account stated. As the supreme court has said:

> [A]n account stated is an agreement, express or implied, between parties who have had previous transactions with each other that a final adjustment of the respective demands of each upon the other is being made as to the whole account or certain items agreed upon; it is not founded upon the original items, but upon the balance ascertained by the mutual assent of the parties.

*Arthur Elevator Co. v. Grove*, 236 N.W.2d 383, 390 (Iowa 1975). The concept of "account stated" is that a "balance" is "struck" between the parties encompassing their prior transactions: This balance becomes the account stated. *Roger's Backhoe Serv., Inc. v. Nichols*, 681 N.W.2d 647, 650 (Iowa 2004). "An account stated may result from the debtor's failure to object to a statement, as assent is implied from a failure to object within a reasonable time." 1A C.J.S. *Account Stated* § 31, at 86 (2005).

Section 282 of the Second Restatement of Contracts defines an "account stated" as follows:

> An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.

Restatement (Second) of Contracts § 282(1), at 386 (1979). Capital One contends that based on the law of "account stated," it need only provide the court with a copy of the final monthly statement it sent to the customer, i.e., a so-called "charge-off statement," perhaps accompanied by an affidavit that the charge-off statement is the culmination of prior monthly statements.

A number of jurisdictions have recognized the account stated cause of action with respect to credit cards. These courts generally reason that a customer's ongoing receipt of credit card statements without objecting to them can give rise to an inference that the customer has accepted the balance shown as due. *See, e.g., Credit One, L.L.C. v. Head*, 117 Conn.App. 92, 977 A.2d 767, 770–71 (2009) (upholding the use of the account stated cause of action where the credit card company proved that regular monthly statements were sent to the customer and the customer failed to object to them, even though the company did not introduce all those monthly statements into evidence); *Farley v. Chase Bank, U.S.A., N.A.*, 37 So.3d 936, 937–38 (Fla.Ct.App.2010) (holding that a credit card company did not have to provide an itemized copy of the account sued upon when it was bringing an action for account stated); *Citibank (S.D.) N.A. v. Jones*, 272 A.D.2d 815, 708 N.Y.S.2d 517, 518–19 (2000) (applying account stated cause of action to a credit card collection action); *Busch v. Hudson & Keyse, L.L.C.*, 312 S.W.3d 294, 298 (Tex.Ct.App.2010) (holding that "account stated is a proper cause of action for a credit card collection suit").[6]

---

**6.** In Pennsylvania, there is some disagreement as to whether the doctrine of "account stated" applies to credit cards. *See Target Nat'l Bank v. Kilbride*, 10 Pa. D. & C.5th 489 (Pa.Com.Pl.2010) (holding credit card company had failed to establish a prima facie case of account stated); *American Express Centurion v. Decker*, 9 Pa. D. & C.5th 299 (Pa.Com.Pl. 2009) (noting disagreement in Pennsylvania courts as to whether the account stated cause of action may be used to collect a credit card debt). Although credit cards have characteristics of an "open account," in that the customer has an account and is regularly billed for individual items, not every "open account" becomes an "account stated." *Roger's Backhoe Serv.*, 681 N.W.2d at 650 ("Although suit on an open account may be based on a

Typically, the creditor seeking recovery under an account stated theory provides the court with a credit card agreement, a final account statement, evidence that regular monthly statements were sent to the consumer at the address provided by the consumer, and evidence the consumer failed to object to those statements for a period of time. *Credit One, L.L.C.,* 977 A.2d at 771; *see also Citibank (S.D.),* 708 N.Y.S.2d at 518–19 (holding that credit card company established a prima facie case by providing an affidavit the customer was regularly sent monthly statements, the customer never disputed the statements, and there was a remaining balance due). Proof the customer used the credit card is also recognized in some jurisdictions as an element of the prima facie case. *McFarland v. Citibank (S.D.), N.A.,* 293 S.W.3d 759, 763 (Tex.Ct.App.2009).

Some appellate courts have reversed summary judgments entered in favor of creditors that failed to prove all these elements. Yet in doing so, they have not disavowed the account stated theory of recovery. *See Ayers v. Cavalry SVP I, L.L.C.,* 876 So.2d 474, 477–78 (Ala.Civ.App. 2003) (holding the creditor should not have been granted summary judgment when it did not prove regular monthly statements had been mailed to the debtor); *PRA III, L.L.C. v. Gonzalez,* 54 A.D.3d 917, 864 N.Y.S.2d 140, 141 (2008) (holding the creditor was not entitled to summary judgment where it provided insufficient evidence of a credit card agreement, the issuance of cards at the debtor's address, the debtor's use of credit cards, his retention of account statements, or payments on the account). To prevail under the account stated theory, the creditor need not introduce all the customer's prior monthly statements, be-

cause it is not necessary "to prove the specific items constituting the account." *Farley,* 37 So.3d at 938.

Courts have also recognized that the foregoing elements only constitute a prima facie case, which the customer may overcome by proving error in the account. *Id.* at 937.

> A failure to object to an account does not, as against the party to whom it was presented, conclusively establish its character as an account stated, but merely raises a presumption to that effect, and the recipient's conduct is open to explanation. The effect of the presumption is to shift to the defendant the burden of demonstrating how the account is incorrect.

1A C.J.S. *Account Stated* § 32, at 88. The Restatement clarifies that an account stated "does not itself discharge any duty but is an admission by each party of the facts asserted." Restatement (Second) Contracts § 282(2), at 386–87; *see also id.* cmt. c, at 387. The doctrine of account stated does not prevent a party from proving an additional delivery or payment. *Id.* § 282, illus. 1, at 387. Yet proof of error requires specificity—more than just a general statement that the customer disputes some charges. *See Citibank (S.D.), N.A. v. Runfola,* 283 A.D.2d 1016, 725 N.Y.S.2d 246, 246 (2001) (holding the credit card company met its initial burden by submitting an affidavit stating the account had been rendered and retained without colorable objection for over four and one-half months before the action was commenced, and a statement the customer disputed the account in general and conclusory terms was insufficient to create a genuine issue of material fact); *see also In re Estates of Koch,* 258 Iowa 1251, 142 N.W.2d 541, 548

legal theory of account stated, it may also be premised on other theories, which do not

require the showing of a balance struck.").

(1966) (noting with an account stated cause of action, "the burden of proof is upon the party seeking to establish the item claimed was not to be included"); *American Express Bank, FSB v. Johnson*, 945 A.2d 297, 300 (R.I.2008).[7]

■ The Iowa appellate courts have not directly addressed the applicability of the account stated cause of action to credit card claims. But in *GE Money Bank v. Morales*, 773 N.W.2d 533, 540 (Iowa 2009), while discussing the admissibility of unverified credit card billing statements in small claims actions, the court observed that "[a]ny person receiving such statements would consider them genuine and take some action in response to receiving them." This same rationale has led other courts to approve the account stated cause of action in the credit card arena. *See also Graham & Corry v. Work*, 162 Iowa 383, 388, 141 N.W. 428, 430 (1913) ("[A]ssent to its correctness is implied from a failure to object within a reasonable time."). We conclude, therefore, that account stated is a potentially valid claim for creditors seeking to collect a credit card debt in Iowa.

We believe this outcome is also consistent with the supreme court's decision in *U.S. Bank v. Barbour*, 770 N.W.2d 350, 354 (Iowa 2009). There, the court considered the application of Iowa Rule of Civil Procedure 1.420 to a credit card collection case. *U.S. Bank*, 770 N.W.2d at 351. The customer had appeared in the action and moved for a bill of particulars pursuant to rule 1.420. *Id.* The bank responded by providing some monthly statements, but the items on the statements were not consecutively numbered, and the first statement did not reflect a zero balance. *Id.* at 352. The court held this was still enough to require the customer to answer. *Id.* at

353. Additionally, in a footnote at the end of the opinion, the supreme court observed that particulars might not even be necessary to the plaintiff's case. As the court put it,

[A]t this stage in the proceedings, it has yet to be determined on what theory the bank is seeking recovery. As the court stated in its first ruling, further discovery is need[ed] to determine the exact theory upon which the Bank seeks to recover. Rule 1.420 limits the requirement for a bill of particulars to a "pleading founded on an account." Iowa R. Civ. P. 1.420. After the completion of discovery, it may be determined that the bank does not need a bill of particulars to proceed with its lawsuit.

*Id.* at 354 n. 1. In addition to open account, the bank claimed to be asserting quantum meruit and account stated theories of recovery. *Id.* at 352.

### E. Does Section 537.5114 Abolish the Account Stated Cause of Action for Consumer Debtors?

■ Nevertheless, "account stated" is only a doctrine of the common law, and section 537.5114 is a statute. In the event of any conflict between the two, the statute must prevail. The general assembly may enact legislation that abolishes or changes the common law. *Atwood v. Vilsack*, 725 N.W.2d 641, 644–45 (Iowa 2006). The ICCC by its terms applies to all consumer credit transactions. *See* Iowa Code §§ 537.1201–1203. It also specifically provides that its rights and benefits cannot be waived except in the settlement of bona fide disputes. *Id.* § 537.1107. Section 537.5114 of the ICC sets forth requirements regarding the complaint and the proof necessary to obtain a default judg-

---

7. Note that when a creditor relies on an account stated cause of action, as opposed to claiming (mistakenly, in our view) that federal law only affords sixty days to dispute a credit card debt, the debtor retains the ability to challenge specific charges.

ment—"an indication of how the amount was determined" and "sworn testimony, by affidavit or otherwise, . . . showing that the creditor is entitled to the relief demanded." This specific legislation supersedes the common law to the extent of any conflict. *See* Iowa Code § 4.2; *Arthur Elevator Co.*, 236 N.W.2d at 390.

In *Newgard ex rel. Newgard v. Bank of America*, 303 Wis.2d 466, 735 N.W.2d 578 (Wis.Ct.App.2007), the Wisconsin Court of Appeals was confronted with a similar question of priority. There, banks argued they did not have to comply with certain documentation requirements of the Wisconsin Consumer Act—Wisconsin's counterpart to the ICCC—because they had a valid claim for account stated. *Newgard*, 735 N.W.2d at 581. The court disagreed. It explained, "The Banks' argument is based on a misunderstanding of the function of the Consumer Act. The Consumer Act provides procedural protections that apply regardless of the legal theory of the underlying claim." *Id.* at 581–82.

Thus, we are left with the question: What does section 537.5114 require? In Wisconsin, the relevant statute unambiguously required the creditor, upon the written request of the customer, to submit

accurate copies to the court and the customer of writings evidencing *any transaction* pursuant to an open-end credit plan upon which the creditor's claim is made and judgment may not be entered for the creditor unless the creditor does so.

*See* Wis. Stat. § 425.109(2) (emphasis added). Therefore, assuming the customer made a written request, as he had done in *Newgard*, the creditor had to provide doc-

umentation of specific transactions to comply with Wisconsin law.

Iowa's consumer credit code, however, is worded somewhat differently. It has no provision expressly requiring transactional data. Section 537.5114 demands only "an indication of how the amount [sought by the creditor] was determined" and "sworn testimony . . . showing that the creditor is entitled to the relief demanded." Accordingly, the question becomes whether section 537.5114, as interpreted in *ITT Financial Services*, requires Capital One to provide a full transaction history in order to obtain a default judgment against an accountholder. *ITT Financial Services* did not expressly decide this question, and it did not have to, because the creditor there simply submitted a verified claim for a lump sum due, without any underlying figures. Here, Capital One has filed some account statements, just not all of them. Capital One argues it only needs to provide the final account statement, i.e., the "charge-off statement."

The attorney general, appearing as amicus at our invitation[8] (Kelley and Denboer have not appeared), disagrees. He does not take the position that Capital One has to file actual photocopies of statements. Rather, in his brief, he acknowledged the information could be downloaded from an electronic file, so long as "the beginning balance is zero, all the charges are enumerated, and the final billing statement is the amount the creditor alleges is owed." *See ITT Fin. Servs.*, 464 N.W.2d at 489 (holding the court must be provided with "information" sufficient to compute the amount to which the creditor claims to be entitled). At oral argument, he conceded

---

8. We requested the attorney general to appear as an amicus curiae in this case pursuant to Iowa Rule of Appellate Procedure 6.906. The attorney general is the statutory "administrator" of the Iowa Consumer Credit Code. *See* Iowa Code § 537.6103. The attorney general both filed a brief and participated in oral argument. His participation was very helpful in framing the issues before us.

further that even if the credit card company cannot produce a complete transaction history dating back to a zero balance, recovery should be available as far back as the creditor can provide such a history, to the extent of any increase in indebtedness. Nonetheless, there remains a basic disagreement between Capital One and the attorney general as to how section 537.5114 of the ICCC should be interpreted. The attorney general puts it directly, "The Iowa legislature abolished the account stated cause of action for consumer credit transactions governed by the ICCC."[9]

Although the ICCC was based on a uniform law, i.e., the 1974 Uniform Consumer Credit Code (UCCC), that law has been adopted in relatively few jurisdictions. However, we can draw some guidance from the drafters' comments. According to the official commentary, section 5–114 of the UCCC, enacted in Iowa as section 537.5114, serves the following role:

> Studies that have been performed of consumers who have legal action brought against them show a high rate of judgments taken by default, in excess of 90 percent in some urban areas. Modern rules of procedure that require a complaint to contain only the barest of facts contemplate contested litigation. In the event judgment is taken by default there is not enough information in the pleadings to enable the court to enter an accurate award. This section provides that the minimum amount of information necessary to compute the award shall be brought to the attention of the court.

UCCC § 5–114 cmt. The foregoing commentary suggests the drafters wanted to insure the pleadings would "enable the court to enter an accurate award" by going beyond "the barest of facts" to include "the minimum amount of information necessary to compute the award."

Additionally, though Wisconsin did not adopt the 1974 law, part of its Consumer Act (not the language considered in *Newgard*) is worded somewhat similarly to the construction we gave to section 537.5114 in *ITT Financial Services*. Wisconsin Statutes section 425.109 reads in part as follows:

> (1) A complaint by a creditor to enforce any cause of action arising from a consumer credit transaction shall include all of the following:
>
> . . . .
>
> (d) The actual or estimated amount of U.S. dollars or of a named foreign currency that the creditor alleges he or she is entitled to recover and *the figures necessary for computation of the amount,* including any amount received from the sale of any collateral.
>
> . . . .
>
> (3) A judgment may not be entered upon a complaint which fails to comply with this section.

(Emphasis added.) In this respect, Wisconsin's statutory wording ("the figures necessary for computation of the amount") is fairly close to some of the language we employed in *ITT Financial Services* ("information sufficient to compute the amount to which the creditor claims to be entitled").

---

**9.** The attorney general also contends the account stated cause of action should not apply to "a credit card in default." However, he cites no case law in support of this position. Also, his argument seems to be directed at a creditor's effort to establish an "account stat-

ed" from only a single charge-off statement without other elements of proof. As discussed below, we conclude that the creditor must provide more than just a charge-off statement to recover a credit card debt as an account stated.

■ In *Household Finance Corp. v. Kohl,* 173 Wis.2d 798, 496 N.W.2d 708, 709 (Wis.Ct.App.1993), the court ruled that a complaint to collect a consumer debt was insufficient because it only recited the following:

As of March 19, 1991, there remains due and owing by defendant to plaintiff the principal sum of $2,157.30 plus accrued interest of $1,386.27 for a total indebtedness of $3,543.57. Interest will continue to accrue after March 19, 1991[,] at the rate of $1.06 per day.

In other words, simply saying how much principal and interest the consumer owed (and the rate of accrual of interest) was not enough. However, the court implied that a detailed transaction history showing the initial purchase, subsequent finance charges, and payments would have been sufficient, had it been included in the complaint. *Household Fin. Corp.,* 496 N.W.2d at 710–11. Such a transaction history was introduced at trial and reproduced in the court's opinion. *Id.; see also Bank One, N.A. v. Ofojebe,* 284 Wis.2d 510, 702 N.W.2d 456, 459–60 (Wis.Ct.App.2005) (reiterating and approving the holding of *Household Finance Corp.* in a case involving a home equity loan).[10]

Invoking the *Household Finance Corp.* case, the attorney general urges us to adopt a rule that creditors seeking to collect credit card debt must provide transaction level detail rather than just "charge-off statements." We note also that in *Asset Acquisitions Group, L.L.C. v. Gettis,* 186 Ohio App.3d 586, 929 N.E.2d 506 (2010), the Ohio Court of Appeals overturned a lower court judgment in a credit card collection case where the company provided only a charge-off statement, even though Ohio has no counterpart to section 537.5114 or Wis. Stat. 425.109. In that case, though, the consumer denied the charges were his and "[n]either the agreement creating the account, the parties to it, or their course of dealings resulting in the amount allegedly owed [were] identified." *Asset Acquisitions Group, L.L.C.,* 929 N.E.2d at 507.

Yet the Iowa statute does not explicitly require a full itemization or a transaction history. It only requires "an indication of how [the amount claimed by the creditor] was determined," *see* Iowa Code § 537.5114(1), "the minimum amount of information necessary to compute the award," *see* UCCC 5–114 cmt., or "information sufficient to compute the amount to which the creditor claims to be entitled." *ITT Fin. Servs.,* 464 N.W.2d at 489. All these standards beg the question of what *is* the underlying rule of liability. If an account statement is a prima facie basis for liability, then that statement alone should be sufficient to compute the award, without requiring the creditor to go behind that statement to produce earlier itemized breakdowns. To put it another way, under the account stated cause of action, the claim is "not founded upon the original items, but upon the balance ascertained by the mutual assent of the parties." *Arthur Elevator Co.,* 236 N.W.2d at 390. Accordingly, "the original items" are not a necessary prerequisite to obtaining a default judgment.

---

10. Notably, the Wisconsin statute appears to be self-executing. That is, failure to include the necessary data in the complaint is fatal to the claim, even if not raised at the time. *Bank One, N.A.,* 702 N.W.2d at 459–60. On the other hand, in Iowa the defendant waives the sufficiency of the pleadings by not raising that issue in a timely manner. *Lloyd's Plan, Inc. v. Brown,* 268 N.W.2d 192, 193–94 (Iowa 1978). Thus, in a default judgment proceeding covered by the ICCC, the creditor may provide the required information later on, so long as it is submitted before judgment is entered. *ITT Fin. Servs.,* 464 N.W.2d at 489.

The attorney general, citing the *Newgard* decision from Wisconsin, argues that the ICCC has eliminated or restricted the account stated cause of action when a creditor is seeking to collect a consumer debt. But as we have noted, Wisconsin has an express statutory requirement for itemization that Iowa lacks. In Wisconsin, on the written request of the customer, the creditor must submit to the court "writings evidencing any transaction pursuant to an open-end credit plan upon which the creditor's claim is made and judgment may not be entered for the creditor unless the creditor does so." Wis. Stat. § 425.109(2). This express language was the basis for the *Newgard* court's holding that lack of itemization could defeat a creditor's claim. If anything, the Wisconsin legislature's decision to include this language suggests the rest of the statute, including language similar to Iowa's requiring all creditors to provide "the figures necessary for computation of the amount," *id.* § 425.109(1)(d), did not mandate itemization.[11]

The attorney general emphasizes the ICCC was enacted to protect Iowa consumers, and we agree. But consumer protection is not simply a matter of cabining what creditors can do. Some restrictions can increase the cost and reduce the availability of credit, thereby harming consumers. The drafters of the 1974 UCCC, which became the model for the ICCC, recognized this point. They wrote:

It is believed that each change or addition [in the 1974 uniform law] has merit and will provide additional protection to consumers but will not interfere with the extension of consumer credit or with legitimate practices of the great majority of creditors.

. . . .

*States may decide to narrow or broaden Commission recommendations on remedies and contract provisions. But they should recognize that modifications are likely to affect the cost and availability of consumer credit.*

UCCC Prefatory Note. (emphasis added).

Here, the relevant question is whether the Iowa legislature has enacted a requirement that credit card companies submit potentially hundreds of pages of past monthly statements or their equivalent before they can obtain judgments against debtors who are not contesting their alleged debts and did not contest them when they originally received the statements.[12] The potential consumer protection gains from such a requirement appear to be modest. The existence of any consumer benefit depends upon a confluence of the following: (1) an earlier mathematical error occurred; (2) the consumer failed to notice or react to that error; and (3) a court will be able to discover that error by going through an itemized history of the account. At the same time, the debtor's nonappearance in the lawsuit is some indication that he or she does not dispute the overall claim. Deploying judicial resources in these circumstances on behalf of such a debtor may not bring many benefits.[13]

---

11. Wisconsin's transaction history requirement, in addition to having express authority in the statute, is more limited than the lower courts' interpretation of Iowa Code section 537.5114 in this case. In Wisconsin, the transaction history only needs to be provided if the consumer requests it in writing. Under the lower courts' view of section 537.5114, the transaction history must be provided even if (as here) the consumer did not even bother to appear and defend.

12. As noted earlier, Capital One submitted 148 pages' worth of statements in the Kelley case, in an unsuccessful effort to obtain a default judgment.

13. As interpreted in *ITT Financial Services*, section 537.5114 permits the creditor to pro-

On the other hand, the costs of such a requirement may be significant. Capital One has demonstrated that in at least one case (Kelley), it is being foreclosed from obtaining a default judgment against a debtor who used her credit card as recently as October 2005 because of a lack of pre-January 2001 monthly statements. While Capital One may have overstated the burden such a rule imposes on the creditor, it is a burden nonetheless. As Capital One points out, "Under this standard creditors are forced to maintain monthly billing statements in perpetuity in anticipation that a card holder may default on payments potentially years in the future." The costs of this requirement are borne by all credit card holders.

These cost-benefit considerations do not drive our interpretation of the statute, but they do show the general assembly could have reasonably concluded it was not necessary to eliminate the law of "account stated" in order to achieve a desirable level of consumer protection. When the Iowa legislature adopted the ICCC in 1975, it can be presumed to have known about the longstanding law of account stated. We do not read section 537.5114's fairly general language—requiring the creditor to provide "an indication of how that amount [due] was determined"—as cutting off the creditor's ability to rely upon that traditional cause of action.

▇▇▇ Thus, we find both the account stated cause of action for collecting credit card debt and section 537.5114 can coexist. Account stated is a substantive rule of law; section 537.5114 serves a procedural purpose. A creditor that provides (1) a copy of the account agreement, (2) a final or "charge-off" statement with the consumer's address, (3) competent evidence that regular monthly statements were sent to the consumer at the address provided by the consumer and that the charge-off statement is the sum total of those statements, and (4) competent evidence that the consumer used the credit card and never objected to the monthly statements, has established the elements of account stated.[14] These facts will show the account belongs to the consumer, the consumer used that account, the consumer received regular monthly statements, the consumer did not object to those statements within a reasonable period of time, and the balance sought to be recovered is consistent with those statements.

A creditor that provides this proof also has met the requirements of section 537.5114, assuming the judgment sought is consistent with the final account statement. By proving up an account stated cause of action, the creditor has made out a prima facie case that computation of the amount due, see Iowa Code § 537.5114, no longer requires review of the underlying monthly statements. According to the underlying substantive law, the account stated has supplanted the original items and

vide information *after* the petition has been served so long as the court receives it *before* entering the default judgment. So, there is no guarantee the nonappearing debtor would see the detailed transaction history, even assuming section 537.5114 were interpreted as requiring the creditor to provide it. *See Hansman v. Gute,* 215 N.W.2d 339, 344 (Iowa 1974) (holding a defaulting defendant has no right to notice of the default judgment hearing).

14. If the creditor cannot prove the customer never objected to any item, the creditor may still be able to utilize the account stated cause of action by either (a) providing the specifics of any objections and proving they were resolved without further objection by the customer or (b) proving that during the last ninety days before the charge-off statement (or any longer period of time leading up to charge-off), the customer used the credit card and made no objections.

*become* the new obligation. *See Roger's Backhoe Serv., Inc.,* 681 N.W.2d at 650; *Arthur Elevator Co.,* 236 N.W.2d at 390. Of course, as we have already discussed, a debtor who appears can challenge specific items within the account stated claim by competent proof. *See* Restatement (Second) of Contracts § 282 at 386–87.[15]

### F. If the Account Stated Cause of Action Cannot Be Utilized, Must the Creditor Submit a Transaction History Dating Back to a Zero Balance?

 If the creditor cannot establish the elements of an account stated, it may still obtain a default judgment if it can submit the monthly statements themselves, or provide a full account history in some other form. Additionally, a creditor should not be precluded from all recovery, as occurred in these cases, just because its history does not go back to when the consumer last had a zero balance. The attorney general acknowledged at oral argument, and we agree, a creditor should be able to recover any *increase* in debt for which a full transaction history is available. In *U.S. Bank v. Barbour,* the court observed that under rule 1.420, "The failure to start at a zero balance may merely define and limit the bank's proof." 770 N.W.2d 350, 354 (Iowa 2009). Although *U.S. Bank* does not address section 537.5114, and this case does not involve rule 1.420, it is difficult to see why the governing principle should be any different. Inability to produce all the items in the customer's account should not bar *all* recovery, and thereby deliver a windfall to

the debtor. Rather, it should only bar recovery of the items for which documentation is absent.

The possible counterargument to this position is that without a zero balance baseline, it is not possible to verify whether charges appearing on later itemized statements, such as past-due fees, are proper or not. However, we do not believe section 537.5114 goes that far. It requires that the court be able to "compute" the debt, *ITT Fin. Servs.,* 464 N.W.2d at 489, not validate individual charges. Thus, a creditor that can itemize an increase in indebtedness should be able to recover that increase from the consumer.

### G. Disposition of These Cases.

 Procedurally, these cases were and remain small claims cases. The debtor's failure to appear resulted in a default. Iowa Code § 631.5(6). Default *judgment,* however, could not be entered absent compliance with Iowa Code section 537.5114. *ITT Fin. Servs.,* 464 N.W.2d at 488 (noting that section 537.5114 is binding in small claims cases).

 In a small claims case, if the relief is "readily ascertainable," the clerk may enter the judgment; otherwise a magistrate must determine damages. Iowa Code § 631.5(6). If the magistrate conducts a hearing to determine damages, it shall be "simple and informal." *Id.* § 631.11(1); *GE Money Bank,* 773 N.W.2d at 539. The plaintiff may appear personally or by verified account. Iowa Code § 631.10; *GE Money Bank,* 773 N.W.2d at

---

**15.** In *GE Money Bank,* 773 N.W.2d at 533, the court held that credit card billing statements could be admitted in a contested small claims case even though they were not verified. Because *GE Money Bank* did not involve a default judgment, section 537.5114(2) was not raised in the case and was not at

issue. When a default judgment is sought, we believe section 537.5114 requires the information that enables computation of the amount due to be provided in verified form. *See ITT Fin. Servs.,* 464 N.W.2d at 489 ("The information must be included in a verified complaint or in sworn testimony.").

536–37. A verified account is deemed evidence of the matters presented by verification. *GE Money Bank,* 773 N.W.2d at 538.

In these cases, notwithstanding Capital One's verified accounts, the lower courts erroneously denied any recovery, even to the extent an account history was provided and showed an increase in the amount owed. The lower courts also concluded, we believe incorrectly, that section 537.5114 requires a transaction history in all cases. For both reasons, these cases must be reversed and remanded. Given the variant interpretations of section 537.5114 in past lower court cases, we think Capital One should have an opportunity on remand to demonstrate whether it can meet the standards set forth herein.

To be clear, a creditor seeking to recover a credit card debt from a consumer must either:

(1) *Meet the requirements of account stated,* by providing an account agreement with the consumer, a final or "charge-off" statement with the consumer's address, and a sworn statement from a person with knowledge that regular monthly account statements were sent to the consumer at the address provided by the consumer, the charge-off statement is the sum total of those statements, the consumer used the credit card, and the consumer never objected to the monthly statements. If the creditor cannot prove the consumer never objected to any item, as an alternative the creditor may provide a sworn statement detailing the objections and demonstrating they were resolved without further objection by the customer, or a statement establishing that during the last 90 days before the charge-off statement (or during any longer period of time leading up to the charge-off statement), the customer used the credit card and made no objections during that time.

(2) *Provide an itemization of the debt it is seeking to recover,* by filing an account agreement with the customer and a transaction history ending at a recent charge-off statement, together with a sworn statement from a person with knowledge authenticating these two items. In this event, the creditor is limited to recovering any increase in debt shown on the transaction history, plus ongoing interest.[16]

## IV. Conclusion.

For the foregoing reasons, we reverse the judgments below and remand for further proceedings.

**REVERSED AND REMANDED.**

---

**16.** Nothing we have said in this opinion affects the creditor's obligation to comply with Iowa Code sections 537.5110 and .5111 (cure of default and notice of right to cure), to the extent applicable. We also reiterate that a consumer who appears and defends may challenge specific items with competent proof.